405 So.2d 832 (1981)
STATE of Louisiana
v.
Patrick A. KRAUSE.
No. 81-K-0877.
Supreme Court of Louisiana.
September 28, 1981.
*833 Lewis O. Unglesby, Baton Rouge, for defendant-relator.
Willim J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Duncan Kemp, Dist. Atty., Frank L. Koles, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-respondent.
DIXON, Chief Justice.[*]
Patrick A. Krause was charged by complaint-affidavit with operating a vehicle while intoxicated, second offense, in violation of R.S. 14:98 C. Following a bench trial, defendant was found guilty and sentenced to a $500.00 fine plus 115 days imprisonment. The jail term was suspended upon the condition that defendant attend the Substance and Abuse Program for one year. This court granted defendant's application for judicial review pursuant to our supervisory jurisdiction. Defendant assigns three errors for reversal of his conviction; there is merit in two of the three assignments.
On August 6, 1980 defendant was found on the 4-H Club Road near Denham Springs, Louisiana by Officer Lamar G. Tolbert. On direct examination, Officer Tolbert testified that defendant's truck had left the road at a bad curve and struck two trees, causing extensive damage to the vehicle and bodily injuries to Krause. Defendant was arrested and taken to the police station in Denham Springs. After several refusals, defendant submitted to a Photo Electric Intoximeter (PEI) test. The PEI reading revealed a .18% blood-alcohol level which was sufficient to create a statutory presumption of intoxication.[1]

Assignment of Error No. 1
Defendant contends that the trial judge erred in finding him guilty as a second offender because no evidence of a prior conviction was introduced at trial. In order to find a defendant guilty, the state must prove beyond a reasonable doubt each element of the crime. R.S. 15:271. See also, C.Cr.P. 804 A(1). An essential element of the crime of driving while intoxicated, second offense, is a first conviction. City of Monroe v. French, 345 So.2d 23 (La.1977); State v. Neal, 347 So.2d 1139 (La.1977). Where an accused is charged as a second DWI offender, the information or indictment must allege the prior conviction. State v. Neal, supra.
In the instant case, the state failed to allege a prior conviction in the complaint-affidavit. Although the record contains a copy of Krause's previous conviction of driving while intoxicated, no evidence of the prior offense was offered at the trial. The state failed to prove an essential element of the crime charged, namely, defendant's first conviction. Therefore, the trial court erred in finding defendant guilty of driving while intoxicated, second offense.

Assignment of Error No. 3
In this assignment defendant objects to the trial court's admission into evidence of the PEI test results on the ground that the state did not prove compliance with the rules and regulations promulgated by the *834 Department of Public Safety.[2] Before the state may avail itself of the statutory presumption of a defendant's intoxication arising from a chemical analysis of his blood, it must show that (1) the state has officially promulgated detailed methods, procedures and techniques which will insure the integrity and reliability of the chemical tests, including specifically the standard quality of chemicals used; and (2) the state has strictly complied with the officially promulgated methods, procedures and techniques in the chemical analysis offered as evidence in the case on trial. State v. Gregory, 403 So.2d 1225 (La.1981); State v. Goetz, 374 So.2d 1219 (La.1979); State v. Graham, 360 So.2d 853 (La.1978); State v. Jones, 316 So.2d 100 (La.1975).
The rationale behind requiring strict compliance with the regulations was clearly enunciated by this court in State v. Goetz, supra, at 1220:
"Because an intoxication test conducted with chemicals of inferior quality could bring to bear a practically conclusive presumption of guilt against an innocent person, it is essential that the officially promulgated methods, procedures and techniques include a thorough analysis of the chemicals by a chemist under laboratory conditions to insure that they are of proper composition, strength and volume at the time a test is conducted...."
Pursuant to R.S. 32:663, the Department of Public Safety adopted certain regulations which require a maintenance check of all PEI machines at least once every four months accompanied by a spot check of the lot of ampuls used with each machine.[3] This spot check is to be conducted by the Applied Technology Unit and a recertification form filled out. The recertification may be filed with the appropriate court in the parish where each device is located and it will serve as prima facie evidence of the chemical accuracy of the tests performed on that machine with chemicals taken from the lot of ampuls checked.[4]
The trial court refused to allow introduction of the recertification of machine # 168 dated June 30, 1980.[5] The recertification *835 contained a spot check of ampul lot # 14, from which the chemicals used to test Krause were taken. In denying the introduction of the certificate the court referred to the fact that the inspecting technician, George Dunn, was not present to testify.[6] See State v. Goetz, supra. Hence, the sole proof of the chemical reliability of the ampuls utilized in the test conducted on defendant was the manufacturer's "Certificate of PEI Standard of Quality," dated November 6, 1979, introduced by the state;[7] this certificate from the manufacturer was over nine months old when defendant was tested.
The issue presented by this assignment becomes whether the manufacturer's certificate remains prima facie proof of the chemical accuracy of the test after it is four months old. In State v. Goetz, supra, decided under the current regulations, this court held that the manufacturer's certificate of standard chemical quality is deemed prima facie evidence of the good quality of the test chemicals. However, where the manufacturer's certificate is over four months old, the regulations must be read to require a recertification by a local technician.[8] As pointed out in Goetz, the present regulations constitute an apparent attempt by the Department of Public Safety to implement the preferred practice in other states whereby all chemicals are kept under the supervision of a local chemist who conducts periodic spot checks. In any event, we hold that although the manufacturer's certificate may be afforded prima facie weight during the initial four month period, the regulations demand that the Applied Technology Unit perform a maintenance check of all PEI machines at least once every four months accompanied by a spot check of the lot of ampuls used with each machine. The recertification by the Applied Technology Unit will replace the manufacturer's certificate as prima facie proof of the chemical accuracy of the tests.
The trial court based its decision to allow the introduction of the PEI test results upon the manufacturer's certificate as prima facie proof of standard chemical quality. Since we hold that the manufacturer's certificate is not entitled to prima facie weight, the introduction of the PEI results was improper. Without those results, there is no presumption of defendant's intoxication.
The double jeopardy clause precludes a second trial on the same offense where the state's evidence is insufficient to *836 sustain a conviction; the only appropriate remedy is acquittal.[9]
"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow `the State ... to make repeated attempts to convict an individual for an alleged offense,' since `the constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" (Citations omitted). Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9-10 (1978).
The conviction and sentence are therefore reversed, and the defendant is ordered discharged.
LEMMON, J., dissents and will assign reasons.
LEMMON, Justice, dissenting in part.
I agree that the state failed to introduce evidence of the prior conviction and that the conviction of driving while intoxicated, second offense, must therefore be set aside. Furthermore, since the state failed to introduce a proper certificate of recertification, I also agree that the trial court could not properly have found defendant guilty of driving while intoxicated, first offense, and that this court cannot remand for resentencing for that offense under State v. Byrd, 385 So.2d 248 (La.1980). However, I disagree that defendant should be discharged.
The state offered a P.E.I. test which would have been sufficient to convict defendant, but part of the foundation for the accuracy of the P.E.I. test was not in order. The trial judge erred in admitting the P.E.I. test, which although otherwise reliable should have been excluded because of the improper certification. However, the P.E.I. test was admitted, and it did have probative value which was otherwise sufficient to support a finding of driving while intoxicated.[1] The proper procedure here, as in any other case in which probative but inadmissible evidence is considered by the finder of fact, is to remand for a new trial. At the new trial the state must produce the proper foundation for the otherwise sufficient evidence.
NOTES
[*] Judges Grover L. Covington, Luther F. Cole and J. Louis Watkins, Jr. of the First Circuit participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] R.S. 32:662 establishes the following presumption:

"If there was ... 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcoholic beverages."
[2] R.S. 32:663 empowered the Department of Public Safety to approve satisfactory techniques for conducting chemical tests for intoxication, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits to those individuals.
[3] Regulation No. 4 provides in pertinent part:

"c. The Applied Technology Unit shall require manufacturers of ampuls to certify each lot of ampuls made, as to their standard of quality in reference to the chemical contents and tolerance. The Applied Technology Unit shall maintain these certificates on file from the manufacturer. The Applied Technology Unit shall then have the authority to spot check the ampuls with respect to their performance. The machine recertification form that is filed every four months with the clerks of court shall also state that the ampul lot numbers used at each agency were spot checked for performance.
d. Maintenance checks will be performed on a routine basis at least once every four months, by the Louisiana State Police Crime Laboratory, Applied Technology Unit. Items to be checked shall be, but are not limited to, the following:
(1) Each lot of ampuls shall be spot checked for performance.
(2) Clean instrument.
(3) Calibration check of standard ampuls.
(4) Running of a known alcohol solution in which results shall be within plus or minus.010g% or the known alcohol value.
(5) In the event any repair work is needed, it will be recorded in detail." La.Register, vol. 4, No. 4, p. 391 (1978).
[4] Regulation No. 1 states:

"1. After the Louisiana Department of Public Safety has approved a prototype breath testing device as an acceptable model for chemical analysis in breath alcohol testing it shall be necessary for each individual instrument of the approved model to be checked out and approved for use by the State Police Crime Laboratory, Applied Technology Unit, at least once every four months, and a machine recertification form shall be maintained for each machine in the State Police Crime Laboratory, Applied Technology Unit. A copy of this certificate may be filed with the clerk of the applicable court in the respective parishes in which each device is used for breath testing, and this copy shall be prima facie evidence as to the operating performance of the instruments and standard of quality of the ampuls." La.Register, vol. 4, No. 1, p. 390 (1978).
[5] The recertification form read as follows:

"...
This is to certify that Instrument # 168 Model 400 Photo-Electric Intoximeter is an approved instrument for use in Breath-alcohol Testing and is certified to be in proper functioning condition on this 30th day of June, 1980.
Located at Denham Springs Police Department, Denham Springs, La. Ampul lot # 14 spot checked for performance.
This certificate is prima facie evidence of the proper functioning of the instrument."
The recertification is signed by George Dunn and Bailey D. Hughes II.
[6] We note that no new regulations have been formulated by the Department of Public Safety despite our holding in State v. Goetz, supra, that the results of periodic spot checks were unacceptable due to the lack of adequate criteria for a spot check. Thus, the trial court might have correctly refused the introduction of the recertification even if the inspecting technician had been present.
[7] Other documentary evidence introduced by the state included a rights form, a permit issued to George Dunn qualifying him as an operator, maintenance technician, and instructor, and the results of the test performed on defendant.
[8] Prior regulations might have been interpreted to allow the manufacturer's certificate to suffice as prima facie proof of chemical reliability no matter its age. For example, the 1977 regulations provided:

"Each lot of ampuls shall be certified at the factory by the manufacturer as to their standard of quality. This certificate shall be prima facie evidence as to the standard of quality of the ampul." La.Register, vol. 3, No. 5, p. 273 (1977).
The regulations in effect in 1975 and relied upon in State v. Graham, supra, contained an identical provision. See La.Register, vol. 1, No. 6A, p. 563 (1975). The current regulations contain no such provision according prima facie weight to the manufacturer's certificate.
Even so, in State v. Westbrook, 392 So.2d 1043 (La.1980), decided under the 1977 regulations, we expressly qualified our holding that the manufacturer's certificate was prima facie evidence of reliability with the observation that the manufacturer's certificate was less than four months old.
[9] In State v. Byrd, 385 So.2d 248 (La.1980), we held that where it is clear from the verdict that the judge or jury necessarily found the elements of a lesser and included offense to have been proved beyond a reasonable doubt, entry of a judgment of guilty to a lesser and included offense was permissible despite the absence of sufficient evidence to support a conviction of the crime charged. In the instant case, however, the Byrd procedure is inappropriate. The state not only failed to muster sufficient proof of the crime charged in the complaint-affidavit by not introducing evidence of the first conviction, it also failed to establish adequate proof of Krause's intoxication. The erroneous introduction of the PEI test which presumed defendant to be under the influence of alcohol at the time of his arrest is so prejudicial that a conviction cannot stand, even if there is other evidence of intoxication. State v. Graham, 360 So.2d 853, 858 (La.1978). Without this proof, the trial judge could not find that all elements of the lesser offense of driving while intoxicated, first offense, had been proved beyond a reasonable doubt.
[1] While the test was legislatively inadmissible, it is highly probable that the test (which in all other respects was proved to be properly performed) was reliable and probative of guilt.