443 So.2d 777 (1983)
STATE of Louisiana
v.
Mark A. DOUCET.
No. CR83-380.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
*778 David R. Lestage, Hall, Lestage & Landreneau, DeRidder, for defendant-appellant.
W.C. Pegues, III, Dist. Atty., and David W. Burton, Asst. Dist. Atty., DeRidder, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
DOMENGEAUX, Judge.
Defendant, Mark A. Doucet, was indicted for the negligent homicide of Priscilla Young, in violation of La.R.S. 14:32. He waived trial by jury. Following a bench trial, defendant was found guilty as charged. He was sentenced on March 2, 1983, to serve a term of two and one-half years of imprisonment at hard labor. Defendant now appeals on the basis of eight assignments of error.
FACTS
At approximately 12:30 A.M. on January 1, 1982, a vehicular collision occurred at the intersection of U.S. Highway 171 and Louisiana Highway 26, south of DeRidder, in Beauregard Parish. As a result of this collision, Mrs. Priscilla Young was killed.
At trial it was established that Ronnie Young, and his wife Priscilla, were traveling south on U.S. Highway 171, shortly after midnight on January 1, 1982. Mr. Young was driving at a slow rate of speed due to the heavy fog blanketing the area. It was learned through testimony that the highway curved to the right at the intersection of U.S. Highway 171 and Louisiana Highway 26, and as Mr. Young drove around the curve he saw defendant's on-coming *779 vehicle passing cars and proceeding to pull onto the left shoulder (Mr. Young's right). Immediately after defendant pulled onto the left shoulder, he then came back onto the highway into Mr. Young's lane of travel. Mr. Young pulled his vehicle to the left to avoid the collision, but the right side of defendant's vehicle struck the right side of the Young vehicle. Mrs. Young was taken to Beauregard Memorial Hospital, in DeRidder, where she was pronounced dead.
The defendant testified that when he approached the line of vehicles, south of the intersection, he passed two vehicles and was attempting to pass two more vehicles when the collision occurred. He also testified that he had seen headlights ahead, crossing into Louisiana Highway 26.
Subsequent to the accident, the defendant was arrested and taken to the DeRidder City Police Department, where he was given a P.E.I. test by Trooper Spurgeon. The results of the defendant's P.E.I. test indicated a blood alcohol concentration of 0.087 g.%, a concentration which fell slightly short of the presumptive level of intoxication.
ASSIGNMENTS OF ERROR
The trial court erred:
1. In allowing Louisiana State Troopers Spurgeon and/or Bickham to testify concerning statements made by defendant.
2. In allowing testimony and evidence regarding the photoelectric intoximeter test, including its results.
3. In admitting the testimony of Mrs. Carlene Johnson relating her husband's statement characterizing defendant's driving and indicating that a wreck was a likelihood.
4. In allowing David Shannon Elliott to testify regarding the alleged actions, driving and/or speed of defendant several miles from the accident scene.
5. In failing to grant the motion for acquittal since the law and evidence were not sufficient to maintain a verdict of guilty.
6. In rendering its verdict of guilty since the law and evidence were not sufficient to maintain a verdict of guilty.
7. In failing to grant the motion for a new trial since the law and evidence were not sufficient to maintain a verdict of guilty.
8. By imposing a sentence which is excessive and constitutes cruel and unusual punishment.
ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in allowing Louisiana State Troopers Spurgeon and/or Bickham to testify concerning statements made by defendant. Defendant, on appeal, urges that he was taken into custody by the police officers and was not advised of his constitutional rights and therefore any statement made by him while in custody, without being given his Miranda warnings, renders the statement inadmissible. State v. Petterway, 403 So.2d 1157 (La.1981).
The statements which defendant asserts were inadmissible were given to the investigating officers moments after their arrival on the scene. Defendant was the first person questioned once the injured were taken away. According to the Troopers, defendant stated that he passed a vehicle and then he didn't know anything else, except that he didn't see the other vehicle until just before impact.
The State contends that the statements were admissible because defendant was not in custody at the time they were made and consequently the Miranda warnings were not necessary. In State v. White, 399 So.2d 172 (La.1981), the Court stated:
"Miranda warnings are not a prerequisite to admissibility of statements taken by officers during non-custodial, general on-the-scene investigations, conducted to determine the facts and circumstances surrounding a possible crime, absent a showing that the investigation has passed the investigatory stage and had focused on the accused. State v. Weeks, 345 So.2d 26 (La.1977); State v. Brown, 340 So.2d 1306 (La.1976)."
*780 At 174.
In State v. Thompson, 399 So.2d 1161 (La.1981), the Court reviewed the factors to consider in determining whether the detention of defendant was significant enough to warrant a reading of the Miranda warnings. See La. Const. Art. I, § 13. The court stated:
"The determination of whether the detention is significant is to be made objectively from the totality of the circumstances.... Factors relevant to the determination include (1) whether the police officer had reasonable cause under C.Cr.P. 213(3) to arrest the interrogee without a warrant; (2) the focus of the investigation on the interrogee; (3) the intent of the police officer, determined subjectively; and (4) the belief of the interrogee that he was being detained, determined objectively. Whether or not there is a custodial interrogation under federal terminology or a significant detention under Louisiana terminology must be determined on a case-by-case basis. State v. Ned, 326 So.2d 477, 479 (La.1976)." (Emphasis theirs).
Thompson, at 1165.
As noted in Thompson, each case must be evaluated objectively to determine whether there was a significant detention. In the instant case, as stated earlier, the officers testified that the defendant was the first witness to be questioned. The only fact known by the officers at this point was that a head-on collision had taken place which caused injuries. Upon the initial contact with defendant, there was no indication that anything of a criminal nature had taken place to justify a finding that probable cause existed to arrest him. Therefore it does not appear that defendant was "significantly detained" at the time he made the statements; consequently, Miranda warnings were not necessary.
Additionally, the State notes, in brief, that even if the statements were inadmissible, the remarks were merely superfluous to a finding that the defendant's actions represented a gross deviation from the standard of care expected to be maintained by a reasonably careful man under like circumstances. Consequently, there was not any reasonable possibility that the alleged error contributed to the conviction. State v. Gibson, 391 So.2d 421 (La.1980). Even if this Court were to find that the statements were not admissible, the State's argument appears to be correct that these statements were superfluous and that admitting them into evidence amounts to harmless error. The transcript reflects an abundance of testimony by other witnesses which was sufficient to convict the defendant. Hence, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial court erred in allowing testimony and evidence regarding the photoelectric intoximeter (P.E.I.) test, including its results. Defendant filed a motion to suppress the results of the P.E.I. test; after a hearing on the motion was heard, the trial judge denied the motion. Defense counsel urges that the troopers did not instruct defendant properly concerning his rights to submit or refuse to take the test. Therefore the motion to suppress should have been granted. Also, defendant urges that the results of the P.E.I. test were not admissible for the reasons given during objections at trial.
At the motion to suppress hearing, the defense introduced a rights form signed by the defendant. During the hearing, defendant admitted he had signed the rights form. The rights form which he signed complies fully with La.R.S. 32:661(C).[1] Defendant testified that he was instructed to take the test and that if *781 he refused he could lose his driver's license. Defendant further testified that he was read the rights form and that he understood it when he signed it. From the testimony of the defendant alone, it is evident that the police officers fully complied with the requirements of law. See La.R.S. 32:661-669. Consequently, the trial judge correctly denied defendant's motion to suppress.
As stated earlier, defendant also urges that the P.E.I. test results were not admissible based upon his objections made at trial. Defendant states that the inspecting technician, Mr. George Dunn, and the Supervisor of Maintenance and Custodian of Chemical Testing Records, Mr. Bailey D. Hughes, II, did not appear and testify concerning any spot check procedures conducted on the P.E.I. machine or the ampul lot used in this case. Defendant relies upon State v. Krause, 405 So.2d 832 (La.1981) and State v. Morrison, 392 So.2d 1037 (La. 1980), as authority for holding the test results inadmissible because of the failure to have the proper witnesses testify.
At the outset it must be stated that the line of cases which defendant relies upon dealt with the offense of D.W.I., not negligent homicide. The court enunciated the rationale applicable to the statutory presumption of intoxication, citing State v. Goetz, 374 So.2d 1219 (La.1979):
"Because an intoxication test conducted with chemicals of inferior quality could bring to bear a practically conclusive presumption of guilt against an innocent person, it is essential that the officially promulgated methods, procedures and techniques include a thorough analysis of the chemicals by a chemist under laboratory conditions to insure that they are of proper composition, strength and volume at the time a test is conducted ...."

Krause, at 834.
In State v. Green, 418 So.2d 609 (La.1982), the defendant in that case was charged with negligent homicide. The Court, in noting the admissibility of a blood test in connection with the crime charged, stated:
"In order for a chemical analysis of a person's blood to be considered valid in a criminal action or proceeding arising out of acts alleged to have been committed by him while driving under the influence of alcohol, the analysis must have been performed according to methods approved by the Department of Public Safety. R.S. 32:663 (Supp.1977)." (Emphasis added).

Green, at 612.
Under the strict compliance standard adopted in Krause, supra, and Green, supra, the trial judge was correct in admitting the P.E.I. results in this case. The inspecting technician, George Dunn, filed a certification, dated October 13, 1981, with the Clerk of Court for Beauregard Parish, attesting to the fact that he had examined P.E.I. machine No. 359, and that he had also spot-checked ampul lot No. 81-924 for performance, the same P.E.I. machine and ampul lot utilized for performance of the P.E.I. test in this case. This certificate was introduced into evidence at trial. Also, Mr. Dunn's certification as a qualified technician, under the rules and regulations of the Department of Public Safety, was filed with the Clerk of Court for Beauregard Parish, and a certified copy of that certification was introduced into evidence. In addition, the manufacturer's certificate of the ampuls' standards of quality was introduced into evidence. Finally, Volume 6, No. 11 of The Louisiana Register which was in effect at the time of the accident in the instant case was introduced into evidence by the State. The requirements of Volume 6, No. 11, which were formulated subsequent to the regulations in effect when Krause was decided,[2] were complied with by the State in this case. Therefore this assignment of error lacks merit.
*782 ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in admitting the testimony of Mrs. Carlene Johnson relating her husband's statement characterizing defendant's driving and indicating that a wreck was a likelihood. Over objection, the State was allowed to ask Mrs. Carlene Johnson about a statement uttered by her husband as defendant's vehicle went around them near Pleasant Hill Road on U.S. Highway 171, which is near the accident scene. Mrs. Johnson testified that Mr. Johnson stated: "The car was going to have a wreck, run over somebody driving like that." The trial judge allowed the testimony in on the basis that it formed part of the res gestae. Defense counsel asserts that the statement was inadmissible hearsay.
In State v. Billiot, 421 So.2d 864 (La. 1982), the Louisiana Supreme Court declared:
"The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances. La.R.S. 15:448; State v. Molinario, 383 So.2d 345 (La.1980); State v. Drew, 360 So.2d 500 (La.1978), cert. den., 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979), and cases cited therein." (Emphasis added).
At 867.
Mrs. Johnson testified that it was only a matter of minutes before they reached the accident scene and noticed the defendant's vehicle which had just overtaken them a short distance down the highway. She also indicated that it was only a few seconds after defendant's vehicle passed them that her husband made the observation. Therefore, in light of Billiot, supra, the trial court was correct in admitting the evidence under the res gestae exception. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial court erred in allowing David Shannon Elliot to testify regarding the alleged actions (driving and/or speed) of defendant several miles from the accident scene. The defense objected to Mr. Elliot's testimony on the grounds that it was irrelevant and immaterial since it involved alleged actions of the defendant's vehicle at a time and place remote to the scene of the alleged crime.
Mr. Elliot testified that he had arrived at the intersection of Louisiana Highway 26 and U.S. Highway 171, shortly after the collision. He testified that he observed the two vehicles involved in the accident and that he had seen one of those vehicles "in the range from a minute to three minutes" prior to the accident. He identified the defendant's vehicle as the one he had seen moments prior to the accident. Pertaining to his observations of defendant's vehicle as it passed him, Mr. Elliot testified:
"It seemed to me he was traveling pretty fast, because that night we were all going slow because of the fog, and I kept watching him because he kept getting closer and closer, and it lookedI thought he was going to hit me, and I had already braced myself...."
In the case of State v. Sherer, 411 So.2d 1050 (La.1982), the Louisiana Supreme Court was faced with a similar issue. The defendant, in that case, was charged with negligent homicide. The State introduced into evidence the testimony of a witness who had observed the defendant's vehicle on the highway shortly before the accident. The witness testified that the vehicle sometimes wandered into the left lane and in one instance forced a large truck to pull onto the shoulder of the road. The vehicle was also observed running off the road and hitting a traffic sign. The witness testified that this incident occurred approximately a half of a mile from the area of the accident shortly before the accident happened. The witness further stated that when he arrived at the accident scene, he noticed one of the vehicles involved was the same one he had observed a short time before. The *783 Court stated that the evidence elicited was sufficiently related to the crime charged to allow the judge to permit it into evidence.[3] The Court went on to note that the evidence standing alone was not conclusive, but that there was sufficient probative value to permit the jury to consider it in its determination of the guilt of innocence of the accused. Based upon the reasoning given in Sherer, supra, the trial court was correct in allowing into evidence the testimony of Mr. Elliot. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial court erred in failing to grant the motion for acquittal since the law and evidence were not sufficient to maintain a verdict of guilty. La.C. Cr.P. Art. 778 governs the motion for acquittal. It provides:
"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense."
The denial of a motion for acquittal may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Vaughn, 378 So.2d 905 (La.1979); State v. Hargrave, 411 So.2d 1058 (La.1982).
La.R.S. 14:32 provides in pertinent part:
"Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence."
La.R.S. 14:12 provides:
"Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."
Viewing the evidence in light of the foregoing principles, the trial court did not abuse its discretion in denying the motion for acquittal. The testimony of the witnesses, presented by the State, established that there was a great deal of fog throughout the area which caused traffic to proceed at a slow rate of speed on the night in question. However, witnesses testified that defendant passed them up at a high rate of speed and attempted to pass three cars while negotiating a curve. Defendant was also in a no passing zone where the accident took place. Further evidence adduced at trial indicates that the defendant had a blood alcohol level of 0.087 g.% when the P.E.I. test was administered, a concentration which is only .013g.% less than the presumptive level of intoxication. This factor may be considered, however, along with other competent evidence in determining whether the defendant was under the influence of alcoholic beverages. La.R.S. 32:662(A)(1)(b). It should be noted however that the State did not contend at trial that the defendant was intoxicated. Intoxication is not an element of the offense of negligent homicide, and is unnecessary to establish the presence of criminal negligence in the instant case. Therefore, we conclude that the State presented sufficient evidence that the defendant had committed negligent homicide to warrant the trial judge's denial of the motion for acquittal. This assignment of error lacks merit.
ASSIGNMENTS OF ERROR NOS. 6 AND 7
Defendant contends the trial court erred in rendering its verdict of guilty since the law and evidence were not sufficient to maintain a verdict of guilty. Also, defendant *784 urges the trial court erred in failing to grant the motion for a new trial for the same reasons. In State v. Sharp, 414 So.2d 752 (La.1982), the Louisiana Supreme Court stated:
"In order for a conviction to stand, the evidence, when viewed in a light most favorable to the prosecution, must be sufficient to convince a reasonable trier of fact of the guilt of the defendant, beyond a reasonable doubt, of every element of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Guillot, 389 So.2d 68 (La.1980)"
At 754.
For the reasons set forth in discussing assignment of error No. 5, these assignments of error lack merit. The State presented ample testimony to convince the trial judge beyond a reasonable doubt that the defendant was guilty of negligent homicide.[4]
ASSIGNMENT OF ERROR NO. 8
Defendant contends the trial court erred by imposing a sentence which is excessive and constitutes cruel and unusual punishment.[5]
In State v. Sepulvado, 367 So.2d 762 (La.1979), the Louisiana Supreme Court decided that the imposition of a sentence, even though within the statutory limits, may be unconstitutionally excessive in violation of Article 1, § 20 of the Louisiana Constitution of 1974. A sentence has been determined to be excessive punishment when the penalty is so disproportionate to the crime as to shock the senses of justice or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983); State v. Reed, 409 So.2d 266 (La.1982). However, due to the trial judge's unique advantage of viewing subjective factors not available from the appeal record he is given a wide discretion in the imposition of sentences within statutory limits, and a sentence imposed by him should not be set aside as excessive in the absence of manifest abuse of this discretion. Sepulvado, supra; Goodman, supra; State v. Howard, 414 So.2d 1210 (La. 1982); State v. Bradley, 414 So.2d 724 (La.1982).
We are unable to find any manifest abuse of discretion in this case. The sentence imposed followed a determination of guilt of a most serious crime which had grievous results. The sentence in the instant case is not grossly out of proportion to the severity of the offense, which involved the taking of a human life. Having found no abuse of discretion we will not disturb this sentence on appeal.

DECREE
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] La.R.S. 32:661(C) provides in pertinent part:

"In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights; the law enforcement officers shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test, provided however that a single combination of the two forms may be used...."
[2] See La. Register, Vol. 4, No. 4, p. 391 (1978) for the regulations relied upon by the Court in Krause.
[3] In Sherer, other evidence was presented to bolster the testimony of the witness; the same may be said for the instant case.
[4] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second-guessing" the triers of fact. See State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983), concurring opinion at 1321.
[5] The author of this opinion is compelled to state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 529; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir. 1983), concurring opinion at 1339, writ denied (La.1983). See also State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983).