ON REMAND FROM THE LOUISIANA SUPREME COURT
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.
Defendant, William Tanner, was charged by grand jury indictment on November 16, 1980, with negligent homicide. On December 17, 1981, he filed a motion to suppress the results of a breath analysis test performed on him on November 8, 1980. The trial court granted the motion and in so doing, ruled that the Department of Public Safety Regulations on the use and maintenance of the auto-intoximeter are insufficient to insure the accuracy of the analysis. The State applied to this Court for review of the trial court’s ruling. On December'2, 1982, this Court granted the State’s writ, ruling that the lower court abused its discretion in suppressing the results of the auto-intoximeter test. The Supreme Court granted defendant’s writ on January 21, 1983, and set aside this Court’s ruling, ordering the case to be resubmitted on briefs with oral arguments to be followed by a written opinion. 427 So.2d 444. On May 25, 1983, this Court rendered such a written opinion concerning some, but not all, issues presented (432 So.2d 1186). The defendant again applied for writs to the Supreme Court. The Supreme Court granted defendant’s writ and remanded the previously issued opinion, with instructions to review the other issues not addressed by the initial opinion. State v. Tanner, 438 So.2d 1105 (La.1983).
FACTS
On November 8, 1980, defendant was involved in an automobile accident which resulted in the death of a passenger traveling in another vehicle. Defendant was driving at a high rate of speed when his vehicle struck the rear end of a boat and trailer being pulled by the automobile in which the victim was traveling. The impact of the collision resulted in the death of the victim. The troopers who investigated the accident noticed alcohol on defendant’s breath and took him to Troop D Headquarters where he was administered an autonn-toximeter breath analysis test. Defendant’s reading was .189%, which was well over the level presumptive of being under the influence. LSA-R.S. 32:662.
The following issues should be addressed to clarify this case for trial.
1. Whether constitutionally sufficient methods, procedures and techniques for insuring the reliability and accuracy of the auto-intoximeter were in effect at the time of the measurement of alcohol in defendant’s blood.
2. Whether the Department of Public Safety’s Regulations require that the State introduce affirmative proof of the known alcohol standard used in calibrating the auto-intoximeter.
ISSUE NUMBER 1 — WHETHER CONSTITUTIONALLY SUFFICIENT METHODS, PROCEDURES AND TECHNIQUES FOR INSURING THE RELIABILITY AND ACCURACY OF THE AUTO-INTOXIMETER WERE IN EFFECT AT THE TIME OF THE MEASUREMENT OF ALCOHOL IN DEFENDANT’S BLOOD [1]
Defendant asserts that the Department of Public Safety Regulations on the use and maintenance of the auto-intoximeter fail to set forth a procedure for spot-checking the “known alcohol standard” used in calibrating the machine. As a result, he contends that the State cannot demonstrate the accuracy of an auto-intoximeter test result, and therefore it should be excluded from evidence.
The State argues that a spot-check is not required by either the regulations or the jurisprudence, nor has the defendant demonstrated that such is necessary to insure the integrity of the analysis.
At a motion to suppress hearing, the burden of proof lies with the defendant. LSA-C.Cr.P. Article 703(D). The crux of defendant’s argument rested on two Louisiana Supreme Court decisions, State v. Goetz, 374 So.2d 1219 (La.1979), and State *372 v. Krause, 405 So.2d 832 (La.1981). Defendant argued that the court found the Department of Public Safety’s Regulations to be inadequate in Goetz and Krause, and since his arrest preceded the Krause opinion, it follows the regulations were lacking on the date of his arrest.
In Goetz, the defendant contested the admissibility of a P.E.I. result. As proof of the machine’s accuracy, the State introduced a copy of its recertification form. The Court held:
“... until the Department clarifies its regulations, this Court cannot accept a certificate of a spot check for performance as proof that chemicals have been subjected to a genuine test and found to be of standard quality by a chemist or other person qualified to render such an opinion. The state may continue to prove chemical quality, however, by introduction of the manufacturer’s certificate or by evidence ordinarily admissible in criminal trials.”
Krause presented another objection to the admissibility of a P.E.I. result. The Supreme Court observed, at page 835, in footnote 6:
“6- We note that no new regulations have been formulated by the Department of Public Safety despite our holding in State v. Goetz, supra, that the results of periodic spot checks were unacceptable due to the lack of adequate criteria for a spot check. Thus, the trial court might have correctly refused the introduction of the recertification even if the inspecting technician had been present.”
In citing Goetz and Krause as authority for his contention that the auto-intoximeter regulations are inadequate, defendant has presumed that the Supreme Court has declared the auto-intoximeter regulations to be faulty. This conclusion is totally unwarranted. The Goetz and Krause Courts noted only that the regulations governing spot-check of the P.E.I. ampuls were insufficient. Also, there was no mention made of the “known alcohol solution” used in spot-checking these ampuls.
Another fallacy in defendant’s argument is the assumption that the regulations for the recertification procedure for each machine are one and the same. An examination of the Department regulations indicates that this is not the case. Each machine has its .own set of regulations for its use and maintenance. The Department of Public Safety has realized that the two machines are radically different and has written the regulations accordingly. The auto-intoximeter does not utilize chemical ampuls and therefore there is no requirement for an ampul spot-check in the auto-intoximeter regulations.
Defendant has asserted that State v. Morrison, 392 So.2d 1037 (La.1980), held the P.E.I. and the auto-intoximeter to be subject to the same rules. Certainly, some of the Department regulations are applicable to both types of intoximeters, for instance the rules requiring that the operators and technicians be qualified. However, the regulations on the machines’ use and maintenance were clearly intended to be applicable only to the machine for which they were written. In Morrison, the Court merely recognized that concerns about accuracy exist with both machines.
Finally, the defendant has given the Goetz holding an application never intended by the Supreme Court. The Supreme Court did not hold that as a result of the inadequate regulations, the P.E.I. test was an unconstitutional search and seizure or that it was an unreliable, inaccurate test. Nor did the Court hold that under the regulations as written, the State would never be able to establish the accuracy and reliability of the machine. What the Court did hold was that under the regulations as written, the State could not rely on the P.E.I. machine’s recertification form as pri-ma facie proof of its accuracy.
It would not appear that defendant carried his burden of proving that the Supreme Court’s holdings in Goetz and Krause were intended to include the regulations pertaining to the auto-intoximeter. Nor has the defendant demonstrated that the accuracy of the auto-intoximeter is de *373 pendent upon a spot-check of the alcohol standard. Therefore, the trial judge erred in excluding the defendant’s breath test results on the basis of insufficient Department of Public Safety Regulations[2].
ISSUE NUMBER 2 — WHETHER THE DEPARTMENT OF PUBLIC SAFETY REGULATIONS REQUIRE THAT THE STATE INTRODUCE AFFIRMATIVE PROOF OF THE KNOWN ALCOHOL STANDARD USED IN CALIBRATING THE AUTO-INTOXIME-TER.
The defendant urges that the Department regulations require that the State introduce affirmative proof of the known alcohol standard used to calibrate the auto-in-toximeter. He contends that without such evidence, the State cannot demonstrate the accuracy of the machine. The State argues that such affirmative proof is not required by either the Department of Public Safety nor the jurisprudence and therefore is not a prerequisite for the admissibility of the auto-intoximeter result.
The result of a breath analysis can trigger a statutory presumption of the defendant’s intoxication. LSA-R.S. 32:662. Therefore, it is not surprising that most of the jurisprudence on the admissibility requirements for the introduction of intoxim-eter results is addressed to situations where a presumption arose that the defendant was under the influence of alcohol. The Supreme Court has been uniform in holding that before the State can benefit from a presumption of defendant’s intoxication, it must officially promulgate “detailed methods, procedures and techniques to insure the integrity and reliability of the chemical tests including provisions for repair, maintenance, inspection, cleaning, chemical accuracy, and certification;” and demonstrate that it “has strictly complied with the officially promulgated methods, procedures and techniques in the chemical analysis offered as evidence in the case on trial.” State v. Gregory, 403 So.2d 1225 (La.1981); State v. Green, 418 So.2d 609 (La.1982).
The trial judge’s remarks in his ruling on the motion to suppress cause one to reconsider whether such a rigid foundation requirement is necessary in a negligent homicide prosecution. The trial judge concluded that the Supreme Court has barred the use of D.W.I. statutory presumption in negligent homicide prosecutions. As authority for this conclusion, he cited State v. Williams, 375 So.2d 931 (La.1979), and State v. Daranda, 388 So.2d 759 (La.1980). Williams did indeed hold such; however, Daranda cannot be said to stand for this proposition nor can the latest Supreme Court decision which addresses the issue, State v. Green, supra. Both Daranda and Green involved negligent homicide prosecutions in which the jury was instructed that the result of defendant’s blood/alcohol analysis created a presumption that he was under the influence of alcohol in each case. The Court ruled such an instruction was permissible because the judge had not instructed the jury that defendant’s negligence was presumed. Therefore, the State had not been relieved of any part of its burden of proof.
The relevance of these holdings to this case is that the same rationale for the rigid admissibility requirements that existed there and in past decisions exists in this case, i.e., the result of defendant’s auto-in-toximeter result can create a presumption that he was intoxicated.
The defendant argues that strict compliance with the Department of Public Safety Regulations requires that the State introduce evidence of the known alcohol standard used in the auto-intoximeter’s calibration. An examination of the Department regulations reveals no such requirement. The regulations .state, in pertinent part:
*374 “6. Procedures for analysis using the Auto-Intoximeters.
a. General observation of the subject for a period of fifteen minutes prior to testing whereby the subject shall not have ingested alcohol, alcoholic beverages, regurgitated, vomited or taken anything by mouth.
b. The operator conducting breath analysis shall conduct such analysis in accordance with the “Auto-I operational check list” which contains, but is not limited to, the following:
(1) Completing the information section concerning such things as name of subject, arresting and testing agency, instrument location, and date of instrument certification.
(2) General: whereby instrument is turned on and fifteen minutes observation period is conducted.
(3) Setup: Alcohol standard run whereby instrument is shown to be in calibration tolerance plus or minus .010g%, and blank test automatically run to show alcohol free instrument will be used in testing.
(4) Test Subject: subject given test, when test subject light goes out, proper sample has been obtained.
(5) Print: Printout button depressed whereby test results are printed automatically by the instrument.
[[Image here]]
c. Maintenance: Maintenance inspections will be performed on a routine basis at least once every four months by technicians working for the Applied Technology Unit. Items to be checked shall be, but are not limited to, the following:
(1) Clean instrument
(2) Running of a known alcohol value, thereby checking the instrument and calibration. Results shall be within plus or minus .010g% of the known alcohol value.
(3) Insure locking mechanism on instrument still intact.
(4) Check calibration factor and if necessary reset between proper reading.
(5) Check Printer, ribbon, and paper
(6) Check battery.
d.Each time the Auto-I is inspected and certified, the date of certification shall be placed on the instrument. This date of certification shall also be placed on each operational check list.”
4 La. Register 390, 391, 392 (1978).
In State v. Krause, supra, the Court held that the periodic recertification performed by the Applied Technology Unit will constitute prima facie proof of the chemical accuracy of the tests. It. is conceded that Krause involved a P.E.I. analysis; however, this distinction should not have any significance with.respect to this particular issue. Recall that in State v. Morrison, supra, at 1040, the Court held that although most of the jurisprudence is addressed to the P.E.I., the principles underlying those pronouncements are concerned with the accuracy of the test results and therefore applicable to both the P.E.I. and auto-intoximeter.
Given that the recertification form will constitute prima facie proof of the machine’s accuracy, the next inquiry is whether the form must include a statement addressed to the known alcohol standard used in the calibration procedure. Research of Supreme Court opinions which treated the issue of admissibility of breath test results indicates that there is no such requirement. In State v. Goetz, supra, at 1221, the recer-tification form introduced by the State mentioned only that the ampul lot had been spot-checked for performance. Noticeably absent from the form was any reference to the “known alcohol standard” which is also used in the P.E.I.’s checkup. Although the Court did not accept the recertification form as proof of the chemical accuracy of the analysis, it was not because of any omission of a statement addressed to the solution used in spot-checking the ampuls. Rather it was because the Department of Public Safety at that date had not established sufficient criteria to insure the reliability of the spot-check of the P.E.I. ampuls and because the State did not establish the qualifications of the person who performed *375 the check. The opinion implies that a reference to the known alcohol solution used to test the machine is not required.
The trial judge placed great weight on the Supreme Court’s observation in Morrison that the auto-intoximeter’s accuracy is directly affected by its periodic calibration. Morrison, supra, at 1041. He also noted that the issue of the known alcohol standard was specifically raised in Morrison but not addressed. The trial judge took the extra step that the Morrison Court avoided, and concluded that because the calibration was so vital, the State should be required to introduce evidence as to the chemistry of the solution used in calibrating the machine.
Although this argument appears to have some merit, it is not supported by the jurisprudence. If the accuracy of the auto-in-toximeter depends on its calibration, then certainly it can be said that the accuracy of the P.E.I. test depends on the chemical makeup of the ampuls it utilizes in its analysis. Yet the Supreme Court has not required the State to produce affirmative proof of the ampuls’ chemistry. In past cases, a simple statement purporting that the ampul lot had been spot-checked for chemical accuracy sufficed as prima facie proof of the chemical accuracy of the test.
It should be noted that the regulations governing the recertification of the P.E.I. are no more detailed than those which set forth the recertification procedure for the auto-intoximeter. The regulations for both machines state simply that a known alcohol solution shall be run through the machine and the result must be within a tolerance range of plus or minus .010g%. Department of Public Safety Rules on Breath and Blood Alcohol Analysis Methods and Techniques — Rule 4(d)(5); Rule 6(c)(2). 6 La. Register, 660, 661 (1980). Arguably, a statement attesting that the auto-intoximeter had been spot-checked within four months of the analysis at issue and had been certified to be in proper functioning order would indicate that the calibration test produced results within the accepted tolerance range and thus be prima facie proof of the machine’s accuracy. The recertification form introduced by the State in this case stated exactly such and therefore was in compliance with the Department regulations. The trial judge erred in ruling that the regulations require affirmative proof of the known alcohol standard.
For the foregoing reasons, the ruling of the trial court sustaining the motion to suppress the evidence in dispute is hereby reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.

. The State’s assertion that defendant stipulated that all the rules and regulations pertaining to the auto-intoximeter were followed is without merit. The record indicates that defendant stipulated only as to the machine’s operating procedure. (Tr., pg. 9.)

. Note that the trial judge’s remarks were directed toward the 1980 regulations which were introduced by the State. Arguably, these regulations are not relevant to this particular issue, for the 1978 regulations were in effect on the date the auto-intoximeter in question was certified. The discrepancy is perhaps immaterial, for the 1980 regulations on the use and maintenance of the auto-intoximeter do not differ from the 1978 regulations.