EDWARDS, Judge.
Defendant, John J. Bailey, was convicted of driving while intoxicated, in violation of LSA-R.S. 14:98. He received a 90 day suspended sentence and was placed on active probation for two years with the condition that he pay a fine of $250 plus costs. Defendant was also convicted of failure to maintain control in violation of LSA-R.S. 32:58, and was sentenced to pay $100 plus costs, in default of which he will be required to serve 20 days in the parish jail.[1] We granted this writ to determine whether the trial court committed reversible error by allowing the state to establish the presumption of the defendant’s intoxication through the introduction of a chemical analysis of his blood-alcohol content without presenting proof of compliance with the rules and regulations promulgated by the Department of Public Safety.[2]
On September 20, 1985, John Bailey crashed his truck in the woods on his way home from a barbecue in Covington. The accident was reported to the Louisiana State Police and Officer Joseph F. Piazza was sent to investigate. At the scene, Officer Piazza saw skid marks, the wrecked truck in the woods, and the defendant standing nearby. The defendant told Officer Piazza that he was the driver of the wrecked vehicle. Officer Piazza noticed that the defendant had bloodshot eyes, smelled strongly of alcohol, and had difficulty removing his driver’s license from his wallet. Officer Piazza read the Miranda warnings to Bailey and requested that he take a field sobriety test. After failing the test, Bailey was arrested and transported to the Hammond Police Department where, after signing the standard form, he was administered the Photo-Electric Intoxime-ter (PEI) test by Officer Piazza. The PEI reading revealed a .155% blood-alcohol level which was sufficient to create a statutory presumption of intoxication.[3]
The trial court denied Bailey’s motions to suppress the PEI test results and his admission that he was the driver of the wrecked vehicle. Defendant assigns five errors for reversal of his conviction.[4]
*845 ASSIGNMENT OF ERROR NUMBER ONE
In this assignment, the defense argues that the trial judge erred in denying defendant’s motion to quash the PEI test results because the state failed to show that the PEI machine was properly checked and maintained.
Since September 9, 1977, Louisiana law has required that all chemical analyses of suspected drunken drivers’ blood be performed according to the methods approved by the Department of Public Safety. See 11 La.Reg. 256 (1985); LSA-R.S. 32:663. These regulations are designed to insure the integrity and reliability of the chemical tests. Furthermore, the Louisiana Supreme Court has repeatedly stressed “the importance of establishing safeguards to guarantee the accuracy of chemical tests.” State v. Tanner, 457 So.2d 1172, 1175 (La.1984).
The prosecution may not avail itself of the statutory presumption of a defendant’s intoxication arising from a chemical analysis of his blood until it shows that (1) the state has officially promulgated detailed methods, procedures and techniques which will insure the integrity and reliability of the chemical tests, including specifically the standard quality of chemicals used; and (2) the state has strictly complied with the officially promulgated methods, procedures and techniques in the chemical analysis offered as evidence in the case on trial. State v. Krause, 405 So.2d 832 (La.1981); State v. Gregory, 403 So.2d 1225 (La.1981); State v. Goetz, 374 So.2d 1219 (La.1979); State v. Graham, 360 So.2d 853 (La.1978); State v. Jones, 316 So.2d 100 (La.1975).
In Goetz, 374 So.2d at 1220, the court succinctly stated the rationale behind requiring the state to strictly comply with the regulations:
Because an intoxication test conducted with chemicals of inferior quality could bring to bear a practically conclusive presumption of guilt against an innocent person, it is essential that the officially promulgated methods, procedures and techniques include a thorough analysis of the chemicals by a chemist under laboratory conditions to insure that they are of proper composition, strength and volume at the time a test is conducted.
The jurisprudence clearly provides that operators of the breath testing devices must be certified by the Department of Public Safety and that the state must produce positive proof of their qualifications. The state is also required to prove that it strictly complied with the officially promulgated testing procedures. The burden is on the state to lay a proper foundation showing that the ampuls used were of standard chemical quality and the state is responsible for establishing proof of the certification of the machine used to test the defendant’s blood-alcohol content. State v. Morrison, 392 So.2d 1037 (La.1980); State v. Goetz, 374 So.2d 1219 (La.1979); State v. McGuffey, 316 So.2d 107 (La.1975); State v. Karol, 316 So.2d 106 (La.1975); State v. Jones, 316 So.2d 100 (La.1975).
The regulations in effect at the time of Bailey’s arrest required the Louisiana State Police Crime Laboratory, Applied Technology Unit, to inspect, check, and recertify all PEI machines at least once every four months. After each inspection, a recertifi-cation form was issued to verify that the machine checked was an approved instrument for use in breath-alcohol testing and to certify that the machine was in proper functioning condition on the date of the check. This certificate was then filed with the clerk of court in the parish where the device was used. At trial, the state was required to enter into evidence a certified copy of this certificate to prove that the machine was in proper working order and the ampuls were of standard quality. See 11 La.Reg. 256 (1985).
In Goetz, 374 So.2d at 1222-23, the court stated that the regulations promulgated by the Department of Public Safety were unclear. Specifically, the court was concerned about the absence of criteria re *846 garding the identity and qualifications of the individuals authorized to spot check the ampuls and the ambiguous standards set forth for examining the accuracy of the test chemicals. The court noted that it would not accept a recertification form as proof that the chemicals had been subjected to a genuine test until the regulations were clarified.[5]
Prior to Bailey’s arrest, the Department of Public Safety clarified its regulations concerning the qualifications and identity of the individuals inspecting and maintaining the breath testing devices. See 11 La. Reg. 256, 257 (1985). The Department’s procedure for spot checking the ampuls for performance required at least one ampul from each lot of ampuls located at the Applied Technology Unit to be analyzed by use of the known wet bath breath alcohol simulator. Thus, in the instant case, the testimony of the inspecting technician regarding the standard quality of the chemicals taken from ampul lot # F0103 would have been admissible or the state could have introduced a certified copy of the inspecting technician’s permit in addition to a certified copy of the recertification form he filed with the Clerk of Court for Tangipa-hoa Parish.
For example, the court in State v. Doucet, 443 So.2d 777 (La.App. 3d Cir.1983), held that the results of a PEI test given to the defendant were properly admitted into evidence because the state strictly complied with the Department of Public Safety regulations. Here, the state introduced a certified copy of the recertification form filed by the inspecting technician, George Dunn, with the Clerk of Court for Beauregard Parish, attesting to the fact that he had examined PEI machine # 359, and that he had also spot checked ampul lot # 81-924, the same PEI machine and ampul lot used to test the defendant’s blood-alcohol content. The state also correctly placed into evidence a certified copy of Mr. Dunn’s permit as a qualified technician under the rules and regulations of the Department of Public Safety. Id. at 781.
In the instant case, the state entered into evidence a check list to show that the PEI was spot checked before use.[6] However, the state did not produce Officer Piazza’s license to administer the test[7] nor did it introduce into evidence a certified copy of the recertification form filed with the Tangipahoa Parish Clerk of Court stating that PEI machine # 101 and ampul lot *847 #F0103 had been checked out and approved for use within four months of the September 20, 1985, date on which that machine was used to perform the PEI test on defendant. In addition, the state failed to prove that the inspecting technician, George Dunn, was qualified under the applicable Department of Public Safety regulations.[8] Since the state failed to strictly comply with the rules and regulations in effect at the time of Bailey’s arrest, defendant’s conviction must be reversed.
Although the trial court did not refer to the PEI test results in finding Bailey guilty, the wrongful introduction of his blood-alcohol level manifestly prejudiced the defendant’s case, even though there was other evidence of his intoxication. State v. Tanner, 457 So.2d 1172 (La.1984). In the instant case, we are bound by the holding in Morrison, 392 So.2d at 1039, where the court stated that “the system should not tolerate a trial court judgment assertedly based entirely on only part of the evidence admitted, where the admitted but ‘disregarded’ evidence is so probative of defendant’s guilt.”
Because this decision does not entail a finding that there was insufficient evidence to convict the defendant, it is proper that Bailey be retried on the charge of driving while intoxicated. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 {1978); State v. Morrison, 392 So.2d 1037 (La.1980). Upon retrial, the defendant is likely to raise the same questions about the admissibility of his statement admitting that hg was the driver of the wrecked vehicle. To avoid repetition, we will now review assignments of error numbers four and five.
ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment, the defense contends that the trial judge erred in denying defendant’s motion to quash the statement he made to Officer Piazza. Defendant contends that the Miranda warnings were not given until after he admitted driving the wrecked vehicle, one of the main DWI elements that must be proved.
A suspect is entitled to be given the Miranda warnings when arrested or detained. LSA-Const. art. 1, § 13; State v. Sumler, 395 So.2d 766 (La.1981). The factors to be considered in determining whether a custodial situation exists “include the existence of probable cause to arrest, the focus of the police investigation, and the reasonable beliefs of the person being questioned.” Id. at 768. Another factor to be considered is whether or not the arresting officer’s question amounted to a custodial interrogation that was likely to elicit an inculpatory response. State v. Badon, 401 So.2d 1178 (La.1981).
In the instant case, Officer Piazza was simply gathering information when he asked Bailey if he was the owner of the truck. There are no facts to show that at the time of the question, immediately after arriving on the scene, Officer Piazza suspected defendant of drunken driving or any other violation.
This assignment of errqr is without merit.
ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment, the defense contends that the trial judge erred in denying Bailey’s motion to quash the inculpatory statement he made to Officer Piazza because there was no showing that Bailey, who was intoxicated, understood the Miranda warnings.
In State v. Edwards, 434 So.2d 395, 398 (La.1983), the court expressly rejected “the argument that an intoxication level beyond that established as presumptive of intoxication for purposes of our DWI laws ... renders an otherwise validly obtained con *848 sent per se involuntary or somehow raises the burden of the state beyond a showing that the consent was given freely and voluntarily.” In the instant case, the facts show that defendant was able to respond to questions, perform the field sobriety test, and take the PEI test. The facts do not support a finding that Bailey was too intoxicated to understand the import of his actions in executing the consent form.
This assignment of error lacks merit.
DECREE
For the above reasons, the defendant’s conviction is reversed and the case is remanded for retrial.
REVERSED AND REMANDED.

. Bailey's conviction for failure to maintain control is not considered by this court since defendant failed to include evidence of the conviction in his original writ application. Uniform Rules — Courts of Appeal, Rule 4 — 5(i).

. LSA-R.S. 32:663 provides that the Department of Public Safety is authorized to approve satisfactory methods to conduct chemical tests for intoxication, to determine the qualifications and competence of the persons conducting the tests, and to issue permits to those individuals.

. LSA-R.S. 32:662, subd. A, par. 1(c), creates a statutory presumption of intoxication whenever there is 0.10% or more of alcohol in a person’s blood.

. In Assignment of Error Number 2, the defense argues that defendant blew into the PEI tube several times instead of one continuous time, which is needed for an accurate blood-alcohol content test. Assignment of Error Number 3 presents the defense claim that defendant withdrew his consent to take the PEI test. We do not consider the merits of these contentions *845 because we find reversible error in the first assignment of error.

. In a later case, the trial court refused to to admit into evidence a recertification form because the inspecting technician, George Dunn, was not present to testify. The Louisiana Supreme Court noted that since the Department of Public Safety had not formulated new regulations as required by Goetz, the trial court could have correctly refused to allow the recertification form to be introduced even if Mr. Dunn had been present. Krause, 405 So.2d at 835.

. Regulation 7 sets forth the procedures to spot check the ampuls used in breath-alcohol analysis. Section 3 states that:
All ampuls used in breath alcohol analysis shall be received in numbered lots and stored under the supervision of the supervisor of Applied Technology Unit, who is also a forensic scientist. The Applied Technology Unit shall require any manufacturers of ampuls to certify each lot of ampuls made, as to their standard of quality in reference to the chemical contents and tolerance. The Applied Technology Unit shall maintain the certificate on file from the manufacturer. The Applied Technology Unit shall then have the authority to spot check the ampuls with respect to their performance. The instrument recertification form that is filed every four months with the clerk of the respective court may also state that the ampul lot numbers used at each agency were spot checked for performance.
Section 4 provides the procedures for spot checking the ampuls for performance:
Section 4.4 At least one ampul from each lot of ampuls located at an agency shall be analyzed by use of the known wet bath breath alcohol simulator. By obtaining results that are within the tolerance range of plus or minus .010g percent, the ampuls are shown to contain the proper quantity of chemicals.
11 La.Reg. 256, 258 (1985).

. Regulation 2 sets forth the qualifications for operators of the breath testing devices. Regulation 5, Section 1.1 states that: "Operators shall be certified for a period of two years following successful completion of the 40 hour ‘operators training course.’ These permits may be renewed after a refresher course given by the Applied Technology Unit, or any other agency approved by the Applied Technology Unit." 11 La.Reg. 256-57 (1985).

. Regulation 4 sets forth the qualifications of individuals who perform instrument maintenance and inspection. Regulation 5, Section 4.1 states that: “Once a maintenance technician working for the Applied Technology Unit is initially certified, his permit shall remain effective for the duration of his employment.” 11 La. Reg. 256, 257 (1985).