392 So.2d 1037 (1980)
STATE of Louisiana
v.
Allen D. MORRISON.
No. 67324.
Supreme Court of Louisiana.
December 15, 1980.
Albert W. Block, Monroe, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Walter Lee Perkins, Asst. Dist. Attys., for plaintiff-respondent.
CALOGERO, Justice.
This case presents two issues, namely, whether the prosecution failed to provide evidence as to the certification of the Auto-Intoximeter maintenance technicians where blood alcohol test results were introduced to prove defendant's driving under the influence of alcohol, and whether the arresting officer possessed the requisite reasonable cause to have made an investigatory stop of defendant's vehicle. For the reasons set out below, we find that the state did in fact *1038 fail to establish the technicians' certifications and that the officer's stop of defendant's automobile was reasonably justified. The conviction is therefore reversed and the defendant ordered retried.
On the night of Friday, January 18, 1980, Louisiana State Trooper Malcolm G. Ward had stopped his unmarked police unit on the improved shoulder of Highway 165 in Ouachita Parish, Louisiana. Upon his entering the unit on the side closest to the traffic, Trooper Ward's suspicions were aroused by a passing vehicle which had come, in his words, "very, very close" to his person. The trooper, in deciding to investigate, entered the highway, and after following the defendant for a short period of time, observed the auto to be weaving from shoulder to centerline. With lights and siren, Ward signaled for the vehicle to pull to the side.
After stopping, defendant Allen D. Morrison emerged from the car and was observed by Trooper Ward to be unsteady in his balance and to have breath smelling "moderately strong of alcoholic beverage." After advising Morrison of his rights, the trooper administered a sobriety test which, in this case, consisted of having the suspect touch the tip of his nose with each hand while his head was tilted back and his feet were together. Mr. Morrison's reaction to the test was what Ward termed hesitant, prompting the trooper to place him under arrest for driving while intoxicated.
Defendant was then transported to State Police Troop F Headquarters where, after signing the standard form, he was administered the Auto-Intoximeter test[1] by Trooper Ward, who holds a valid operator's permit[2] for such machine. The results of the test, indicating that the defendant's blood contained 0.161 gram percent[3] of alcohol,[4] were introduced at the trial at which defendant was convicted of violating R.S. 14:98, driving while intoxicated. Morrison was sentenced to pay a fine of $300.00 and court costs or, in default thereof, to spend ninety days in jail.[5]
Defendant assigns three errors, the first two challenging the admission of the Auto-Intoximeter test results, the third asserting that Trooper Ward made an investigatory stop of the defendant's vehicle without having the requisite reasonable cause.
Before considering the admissibility of the test result, we must first determine whether use of such result at trial affected or should be construed as having affected the verdict. The trial judge said that he considered the testimony of Trooper Ward alone as sufficient proof of the defendant's drunkenness. In reasons for judgment, he stated, after admitting the results of the Auto-Intoximeter, that "... I am convinced there was sufficient evidence even without regard to the intoximeter to warrant a conviction and so I am going to so rule. However, if you need any comment on the intoximeter and want to appeal on it, I think there is sufficient evidence without it."
In the case of State v. Goetz, 374 So.2d 1219 (La.1979), which involved a DWI prosecution *1039 where a challenge to evidence from a breath analysis machine was sustained, the state made the argument that the impropriety was harmless error because of the existence of other independent evidence of the defendant's intoxication. In rejecting that argument, this Court cited language from the earlier decision of State v. Graham, 360 So.2d 853 (La.1978):
"The wrongful introduction of a chemical analysis which by law presumed the defendant to be under the influence of alcohol at the time of his arrest was manifestly prejudicial to the defendant's case. Although other independent evidence of intoxication was presented by the State at the trial of the case, we are prohibited by the constitution from deciding the factual question of guilt or innocence and must restrict our scope of review to questions of law in criminal cases. La.Const.1974, Art. 5, § 5. Consequently, we cannot speculate as to what decision the trier of fact would or should have made had the inadmissible evidence not been introduced. Instead, we are required to review the record for reversible errors of law and to declare them when found." [citations omitted], at page 1223.
It is true that the instant case is technically distinguishable from Graham, supra, and Goetz, supra, for the reasons that the judge here stated that he considered the other evidence to be sufficient, thereby eliminating the necessity that this Court "speculate as to what decision the trier of fact would have or should have made" absent the inadmissible evidence. Nevertheless, we view the impact of the test results in this case in the same light as did the Court in Graham, supra, and Goetz, supra.
We tend to credit judges with the ability through training and experience to segregate and disregard inadmissible evidence, a faculty which we clearly do not (and properly so) ascribe to trial juries. While in fact this may be something of a fiction, it is generally a reality which does not offend the integrity of trial court determinations. It is entirely another matter for a trial judge to rule that certain damning evidence is admissible and then find a defendant guilty while protesting that his conclusion was absent consideration of the admitted evidence. The latter should not be countenanced.
Where in Goetz we would not say, as a reviewing court, that we found enough evidence absent that improperly admitted, here we say that the system should not tolerate a trial court judgment assertedly based entirely on only part of the evidence admitted, where the admitted but "disregarded" evidence is so probative of defendant's guilt.
The trial court verdict of DWI is, in law at least, affected (or tainted) by the Auto-Intoximeter result. It is therefore necessary that the legality of the admission of those results be examined.
By the enactment of R.S. 32:662 the state has created a presumption which has the effect of shifting the burden of proof to the defendant. State v. Jones, 316 So.2d 100 (La.1975). It is axiomatic that due process requires the state to prove every element of the crime beyond a reasonable doubt. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Searle, 339 So.2d 1194 (La. 1976); and since R.S. 32:662, subd. A, par. 1(c), phrased in the imperative, is a mandatory presumption, it "violates due process `unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt.'" County Court of Ulster County, New York v. Allen, 442 U.S. 140, [at 166,] 99 S.Ct. 2213, at 2229, 60 L.Ed.2d 777 (1979); State v. Lollar, 389 So.2d 1315 (La.1980).
In an effort to insure that various forms of chemical tests used in criminal prosecutions are valid, the legislature has enacted R.S. 32:663, which provides:
"Chemical analyses of the person's blood, urine, breath or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved by the Department of Public Safety and by an individual possessing a *1040 valid permit issued by said department for this purpose. The Department of Public Safety is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department."
In 1975, in the case of State v. Jones, supra, this Court expressed concern regarding the fact that a defendant could be convicted merely upon a showing of the results of a mechanical testing device. We expressed concern that the administration of these tests be done professionally and accurately, and found R.S. 32:663 to be mandatory on the department.
We noted that "... test results establishing legal intoxication dispense with the State's obligation to affirmatively meet its burden of proving the `intoxication' element of the crime beyond a reasonable doubt," and it was further decided that "... before the test results can trigger the presumption of intoxication and thus relieve the State of its burden of proof, much more than the mere designation of the name of a testing device and vague reference to some procedure or technique, without setting forth the specifics of such procedure or technique,... is necessary." State v. Jones, supra, at page 103.
In the past it has been held that operators of the mechanical testing devices need be qualified pursuant to the regulations of the Department of Public Safety, R.S. 32:663, State v. Jones, supra; that the state must produce positive proof of such qualification, State v. McGuffey, 316 So.2d 107 (La.1975); that the procedures for testing must be set out by said rules, that the state must be required to produce evidence of comportment with such rules, State v. Karol, 316 So.2d 106 (La.1975); that the state must lay a proper foundation that the chemicals used in the testing of the P.E.I. machine were of standard chemical quality, State v. Goetz, supra; and that the state must come forward with proof of the certification of each individual machine, State v. Goetz, supra.
The Department of Public Safety has promulgated rules which endeavor to conform the administration of the various chemical tests to the mandate of the legislature and, in particular, to the requirements of this Court as pronounced in Jones, supra, and in its progeny, including State v. Graham, supra. In Graham we stated:
"In considering previous attacks upon the validity of the statutory design, this Court has expressed the opinion that, in order for the State to avail itself of the Statutory presumption of a defendant's intoxication without violation of his constitutional due process guarantee of a fair trial, detailed methods, procedures and techniques must be officially promulgated to insure the integrity and reliability of the chemical tests including provisions for `repair, maintenance, inspection, cleaning, chemical accuracy, certification [as well as] proof of adherence to' those methods, procedures and techniques." [citations omitted.]
The technology which is available to assess alcohol in the blood of a person suspected of being intoxicated is, like much of our applied science, constantly evolving. Recently, the Department of Public Safety has certified no less than four different machines for use in this context, namely, the Photo-Electric Intoximeter (P.E.I.) Model 400, the Gas Chromatograph Intoximeter Mark IV, the Auto-Intoximeter (Auto I) (which is the machine in the instant case), and the Intoxilyzer Model Number 4011 AS-S. 6 La.Reg. 620, 621 (1980). While much of the jurisprudence concerning requirements for the admissibility of mechanical test results was addressed particularly to the Photo-Electric Intoximeter, the principles underlying those pronouncements are concerned with the reliability of the findings and are applicable to each of the four devices, including the Auto-Intoximeter, as are the regulations of the department.
In his first assignment of error, the defendant contends that the state at trial has failed to introduce evidence sufficient *1041 to show compliance with the rules set forth by the Department of Public Safety. As required by the jurisprudence,[6] the prosecution attempted to establish certification of the particular Auto-I machine which had been used to test defendant by the introduction into evidence of a document, reading in pertinent part as follows:
"This is to certify that instrument number 1061 Auto-Intoximeter is an approved instrument for use in breath alcohol testing and is certified to be in proper functioning condition on this 29th day of November, 1979. Located at the Louisiana State Police Troop F Monroe, Louisiana.
This certificate is prima facie evidence of the proper functioning of the instrument.
s/s Bailey D. Hughes, II s/s [Name Illegible]
 Supervisor of Maintenance Inspecting Technician"
Rule 1 of the Regulations of the Department of Public Safety, 4 La.Reg. 390 (1978), states that after the department has approved a prototype breath testing device as acceptable for use in chemical analysis of breath alcohol "... it shall be necessary for each individual instrument of the approved model to be checked out and approved for use by the State Police Crime Laboratory, Applied Technology Unit, at least once every four months, and a machine recertification form shall be maintained for each machine in the State Police Crime Laboratory, Applied Technology Unit...." The regulations then specifically require, at Rule 4d, that "[m]aintenance checks will be performed on a routine basis at least once every four months, by the Louisiana State Police Crime Laboratory, Applied Technology Unit." (The Rule goes on to enumerate the particular items to be checked). 4 La. Reg. 391 (1978). These same regulations in Rule 8, require that "... maintenance and/or repair work will be performed by Breath Analysis Inspectors working for the Applied Technology Unit of the Louisiana State Police Crime Laboratory, who are certified by the Louisiana Department of Public Safety to perform such." 4 La.Reg. 392 (1978). The defendant points out that the document, while reciting that the machine is in proper functioning order, fails to set forth the qualifications, required by Rule 8, of the maintenance technicians (Breath Analysis Inspectors) who have made that determination, and that no other evidence proving their certification was presented at trial.
The accuracy of the intoximeter test results is directly affected by the qualifications and the performance of the maintenance technicians. The regulations which seek to insure the proper calibration of the machines by, among other measures, requiring maintenance personnel to be certified should be and is, especially applicable to the Auto-I machine. A glance at Officer Ward's testimony at trial indicates as much. In describing how a duly qualified operator of the machine obtains an accurate result, the officer testified that "[y]ou press one switch to turn it on so it will warm up. You press a button, it goes through a regular computer sequence which cannot be altered and at a certain point it has a light that comes on and it says `test subject' ... the only other thing you do is press a button that says `print' and it prints out that little grocery store form there."
The calibration of the Auto-Intoximeter, which is performed as a regular part of the maintenance schedule, on the other hand, seems to be somewhat more complex, involving a routine whereby the technician, among other tasks, cleans the instrument, runs a known alcohol standard to check the calibration, and if necessary, resets the calibration factor, the correct setting of which is indispensable to the accuracy of the test. It seems clear that a valid test result from the Auto-Intoximeter turns on the special expertise of the technicians charged with maintaining and calibrating the machine, rather than on any special expertise of the operator.
The certificate relative to proper functioning of the Auto-Intoximeter machine merely contains the names and signatures of the Supervisor of Maintenance and of the inspecting technician. No mention is *1042 made of the source of their qualifications to perform the task of maintenance, or even of compliance with the bare minimum requirement of the regulation, namely, that the technicians be certified[7] by the department.
Furthermore, the state offered no other evidence of compliance with the departmental guidelines, nor testimony of the technicians, nor other ordinary proof of their certification, as would be an available alternative under Goetz, supra.
Accordingly, since Goetz requires that the state lay a foundation for the introduction of mechanical test results by "... `proof of adherence to' those methods, procedures, and techniques" set out by the department, since the department in its regulations requires that the technicians be certified, and since no proof whatever was offered as to the qualifications of the inspecting technicians, we hold that it was error for the trial court to have admitted the results of the Auto-Intoximeter test. The minimum that the state must do to show that the maintenance and calibrating technicians are certified by the department[8] is to include such a statement in the document which serves as proof of the certification of the machine.[9] Of course, an alternate mode of certification would be by the ordinary presentation of evidence.
The issue raised by the defendant's second assignment of error is whether the aforementioned certificate introduced by the state was deficient in failing to bear affirmative and detailed proof that the "known alcohol standard"[10] used to calibrate the Auto-Intoximeter was pure and unadulterated. Because of our determination that the test results were inadmissible due to the state's failure to offer proof of the technicians' certification, we need not address this issue.
Because this decision does not entail a finding that there was an insufficiency of evidence to convict defendant, rather only that the admission of the Auto-Intoximeter test result was erroneous, it is proper that the defendant be retried on the charge of driving while intoxicated. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Because upon retrial the trial court is likely to be faced again with the situation which gave rise to defendant's *1043 third assignment of error, we will here review that assignment.
Defendant maintains that the court below erred in finding that there existed reasonable cause[11] for Trooper Ward to have made an investigatory stop of the Morrison vehicle. Defendant cites the case of State v. Jones, 308 So.2d 790 (La.1975), where this Court found a stop which had occurred under circumstances similar to the instant case to have been initiated without reasonable cause. We believe, however, that this case is distinguishable. The Court's decision in Jones, supra, was prompted in part by the suspect nature of the officers' testimony concerning the weaving vehicle. Rather than formulating a rule of law pertaining to weaving automobiles, the Jones decision was born of a suspicion of the state's evidence which we do not entertain in the instant case. While there is conflicting testimony in this case as to the duration of Trooper Ward's observation of the defendant's auto and as to the actual occurrence of the weaving, we find no reason to discount the officer's testimony, nor have we been presented with any reason to second-guess the decision of the trial judge, present at the taking of the testimony.
Moreover, it is eminently reasonable that Trooper Ward's suspicions be aroused initially by a car passing "very, very close" to his person and then by the uncontrolled weaving of that car at highway speeds. There was certainly at least reasonable cause for Trooper Ward to have intervened in what he was justified in perceiving as a potentially dangerous situation and as a violation of the law.

Decree
For the reasons set out above, the defendant's conviction is reversed and the case is remanded for retrial.
REVERSED AND REMANDED.
NOTES
[1] The Auto-Intoximeter is a computer chromatograph which compares a sample of the subject's breath to a known alcohol standard to determine the percentage of the subject's blood alcohol.
[2] R.S. 32:663, the Regulations of the Department of Public Safety, and State v. Junell, 308 So.2d 780 (La.1975), require that the operator of a breath test machine be certified to perform that function.
[3] At trial, the officer who had administered the test to defendant referred to the results in terms of gram percent, which is incidentally also the terminology of the Regulations of the Department of Public Safety. The statute which creates the legal presumption of intoxication, R.S. 32:662, speaks of the measurement in terms of percentage by weight of alcohol in a person's blood.
[4] R.S. 32:662, subd. A, par. 1(c) provides:

"If there was at that time 0.10 per cent or more of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcoholic beverages."
[5] This case comes before us on writ of certiorari, as there is no appeal of right unless a fine exceeding five hundred dollars or a sentence exceeding six months has actually been imposed. La.Const. art. V, § 5(D) (1974).
[6] State v. Goetz, supra.
[7] The defendant presents in his first assignment of error the additional argument that, irrespective of the state's failure to show the departmental certification of maintenance personnel, the regulations themselves are deficient in not requiring that these technicians be qualified beyond the mere departmental employment and certification. The contention is that the regulations are lacking in the absence of a statement of exactly what qualifications the maintenance personnel are required to possess in terms of education, number of hours of technical training, experience with the particular machine, et cetera.

While counsel for the defense can be credited at trial with a vehement objection to the test evidence on the grounds that the state had failed to show proof of adherence to the regulations, an examination of the record reveals no such challenge to the legal sufficiency of the rules as written. The argument is, therefore, not properly before us. C.Cr.P. art. 841.
Aside from the lack of a timely objection, we would not be inclined to require, for a prima facie showing, that the technicians' skill be proved with more particularity than would be present in a showing of their departmental certification.
[8] At a date posterior to the testing of this defendant, the Department of Public Safety published a Notice of Intent to require that "[t]he inspecting maintenance technician's permit number shall be affixed to this certificate." 6 La.Reg. 620 (1980).
[9] Assuming that the certificate is otherwise in compliance with the requirements of the department, such a certificate would fall under the public documents exception to the hearsay rule.
[10] The Regulations of the Department of Public Safety provide, in pertinent part, for the calibration of the Auto-Intoximeter by the running of a "known alcohol standard":

* * * * * *
"c. Maintenance: Maintenance checks will be performed on a routine basis at least once every four months by the State Police Crime Laboratory, Applied Technology Unit. Items to be checked shall be, but are not limited to, the following:
* * * * * *
(2) Running a known alcohol standard thereby checking the instrument and calibration. 4 La.Reg. 392 (1978)."
* * * * * *
[11] This Court has previously held that law enforcement officials need not have probable cause to initiate an investigatory stop; rather, something less, referred to as reasonable cause, is necessary. State v. Scott, 307 So.2d 291 (La.1975).