504 So.2d 1144 (1987)
STATE of Louisiana
v.
Wallace B. BRADLEY, Jr.
No. 86-KA-665.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1987.
*1145 Jude G. Gravois, Asst. Dist. Atty., Convent, for respondent-State of Louisiana.
Thomas J. Kliebert, Jr., Indigent Defender, Gramercy, for defendant-relator.
Before BOWES, WICKER and GOTHARD, JJ.
WICKER, Judge.
The defendant, Wallace B. Bradley, was convicted of driving while intoxicated (his first offense) and of improper lane usage. The sentence imposed has not been executed pending his appeal of his conviction. We affirm.
Bradley assigns the following errors:
1. Inadequate evidence to convict him of L.S.A.-R.S. 32:79 (improper lane usage);
2. Lack of probable cause to stop him while he was driving;
3. Lack of probable cause to administer the Photo-Electric Intoximeter (PEI) test following his field sobriety test;
*1146 4. Improper certification of the ampul lot; and
5. Error in convicting him of L.S.A.-R.S. 14:98 (driving while intoxicated) based upon a PEI test result of .10.
Bradley was out driving at 2:52 A.M. in Vacherie, Louisiana. He was going approximately 20 m.p.h. in a 45 m.p.h. zone when he was noticed by Deputy Jonathan Warner, out on routine patrol. Warner, following Bradley, saw him pull away from an intersection, pick up speed, and swerve over the broken yellow center line three or four times. Warner testified that Bradley's driving seemed normal to him at this point and until the next intersection two-and-one-half to three miles later. Bradley slowed for the red light but didn't stop, since the light turned green. Bradley then began erratic swerving, crossing over the center line by as much as a car's width seven or eight times. He never swerved to the right on the shoulder, however; and he was driving about twenty miles per hour all this time. No other vehicles were on the road in either direction.
Warner pulled Bradley over to the side of the road; and Bradley got out of the car, staggering and swaying and seemingly off balance. Bradley walked towards Warner, and Warner could see by his "take down" light that Bradley's eyes were red and watery. During the fifteen to twenty foot walk towards Warner, Bradley staggered eight or ten times, with each second step and always to his right. (Bradley's attorney raised the possibility at trial that Bradley was walking with one foot on the shoulder and one foot on the road, causing his erratic walk. Warner, however, testified that both Bradley's feet were on the shell shoulder; and this testimony was unrebutted.) Bradley was "obviously intoxicated", and Warner detected a moderate smell of alcohol on his breath and clothes from a distance of two or three feet.
Warner administered a field sobriety test with the following results:
Bradley stated his name and address with no problem. He recited the alphabet but with slurred speech. He was asked to pick up coins from the ground with the opposite hand while standing on one foot. He performed this task successfully on one foot but fumbled and dropped a coin while standing on the other. He walked a ten-foot straight line, stepping off the line three times.
He was asked to touch his nose with the index finger of each hand with his eyes closed. He missed with one hand; he touched with the other, but hesitantly.
Warner testified Bradley would have passed the field sobriety test had he not dropped the coins.
Bradley was neatly dressed and cooperative; but he was talkative, nervous and upset. He said he had had "a couple" of beers. He also said, in the patrol car on the way to the courthouse in Convent, Louisiana (a forty-five minute drive) that "he had made a mistake, ... he had went out and had too many drinks."
At the courthouse, the PEI machine was tested by Deputy Kurt Roussel, who administered the blood alcohol test to Bradley. Bradley walked across the room without assistance and without falling. Roussel got test results that he said, at different times in his testimony, were either .10 or .10. Both figures appear on the written results. Appendix A. As a result of this reading, Bradley was booked with driving while intoxicated. He was also booked with improper lane usage and driving without a license. (He was found not guilty of this latter charge.)

ASSIGNMENT OF ERROR # 1
Bradley urges that the evidence presented was insufficient to find him guilty of improper lane usage. L.S.A.-R.S. 32:79 reads:
79. Driving on roadway laned for traffic.
Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all other consistent herewith, shall apply.
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained *1147 that such movement can be made with safety.[1]
The elements of the statute require that the state prove that Bradley (1) did not stay in his lane as far as practicable; and (2) Bradley moved from his lane without ascertaining that such a movement could be safely done.
Our standard for reviewing a sufficiency of evidence claim is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
We find there was ample evidence that Bradley did not stay in his lane, crossing the center line eleven times without any apparent reason. These actions in and of themselves would appear to be inherently unsafe. Bradley, in addition, was intoxicated. (See Assignment of Error # 5, infra.) We believe his drunken condition precludes a determination by Bradley that his erratic weaving was safe. We hold that a rational trier of fact could have found that the elements of L.S.A.-R.S. 32:79 had been proven beyond a reasonable doubt and affirm.

ASSIGNMENT OF ERROR # 2
Bradley claims that his manner of driving, which involved swerving over the center line about eleven times and going twenty m.p.h. less than the speed limit, was not sufficient probable cause for Warner to stop him. He further claims that, because of this lack of probable cause, all evidence against him should be suppressed.
"A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions."
L.S.A.-C.Cr.P. art. 215.1(A). Investigative stops of automobiles may be made where there is reasonable suspicion. U.S. v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); U.S. v. Hall, 557 F.2d 1114 (5th Cir.1977).
Louisiana jurisprudence contains several cases which are very close in factual context to the one before us. They hold that driving conduct quite similar to Bradley's constituted probable cause to stop the car. State of Louisiana v. Michiels, 495 So.2d 409 (La.App. 3rd Cir.1986) (Continuously weaving from the shoulder to the center line within the driver's lane, going two or three feet onto the shoulder for a distance of one hundred feet while trying to negotiate a curve, crossing the center line three times and drifting onto the shoulder once, running six inches to a foot over the center line for thirty-five to forty feet, turning without a signal, all within approximately two miles at 1 A.M., constituted reasonable cause for an investigatory stop.); State of Louisiana v. Eppinette, 478 So.2d 679 (La.App. 2d Cir.1985) (Swerving onto the shoulder and crossing the center line into the opposing lane provided a reasonable suspicion of D.W.I.); State of Louisiana v. Downer, 460 So.2d 1184 (La. App. 2d Cir.1984) (Crossing the center lane twice, being very inattentive, driving two blocks down a side street without stopping, making a wide left turn, all late Saturday night near a racetrack, constituted probable cause for a stop.) A case with a contrary result had vastly different facts: driving six inches over the center line for ten feet and swaying several times in the driver's own lane, in a space of one and one-half blocks, was not reasonable cause for a stop. State of Louisiana v. Vaughn, 448 So.2d 915 (La.App. 3rd Cir.1984).
We hold that Bradley's behavior constituted probable cause for Warner to stop him. We affirm the trial judge's denial of Bradley's motion to suppress.

*1148 ASSIGNMENT OF ERROR # 3
Bradley complains that the results of his field sobriety test constituted insufficient probable cause for Warner to arrest him and take him to the courthouse for the PEI test.
An arrest must, of course, be based on probable cause. The probable cause sufficient to justify an arrest, however, requires less evidence than would be required to support a conviction. State v. Barge, 444 So.2d 735 (La.App. 5th Cir. 1984), writ denied 446 So.2d 1229 (La. 1984).
The results of Bradley's field sobriety test, as outlined above, do not necessarily point to drunkenness. Many of the test's parts were passed satisfactorily; and Warner testified that, had it not been for Bradley's dropping the coins, he would have passed the test. The total circumstances, however, included not only the field sobriety test but Bradley's erratic driving and slow speed, his red and watery eyes, his staggering walk, and the smell of alcohol on his breath and clothes.
We believe that the totality of facts and circumstances were sufficient to justify Warner's belief that Bradley had been driving while intoxicated and, consequently, his arrest. This assignment of error has no merit.

ASSIGNMENT OF ERROR # 4
Bradley alleges error in admitting the results of the PEI test into evidence since it was not clearly shown that the ampul lot was properly certified.
L.S.A.-R.S. 32:662 creates a statutory presumption of intoxication. Because of the severe consequences to any defendant resulting from this presumption, the State must show that it has strictly complied with the procedures necessary to insure accuracy of the PEI test. State v. Gregory, 403 So.2d 1225 (La.1981). The Department of Public Safety, consequently, has issued strict regulations regarding the method for chemical testing and the proper certification of the machines, the operators, the maintenance technicians, and the ampuls of test chemicals. 11 La.Reg. 256-258 (1985); State v. Morrison, 392 So.2d 1037 (La.1980). A certificate issued by the Department of Public Safety establishes a prima facie case that these regulations have been complied with. State of Louisiana v. Morrison, supra.
The certificate in question states, "ampul lot # F0402 and # F1002 spot checked for performance." (These were the ampuls of test chemicals used in Bradley's PEI test.) This complies with the language of Section 3 of 007 of 11 La.Reg. p. 258 (1985), which states that the certificate "may also state that the ampul lot numbers used at each agency were spot checked for performance." "Filing of the certificate in question was prima facie evidence of the quality of the ampul used in the testing. Defendant never offered evidence to refute this presumptionspecifically, an independent test of the ampul to show that it was defective." State v. Edens, 465 So.2d 954, 957 (La.App. 2d Cir.1985), writ denied 467 So.2d 538 (La.1985).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR # 5
Bradley urges that a conviction based upon a negative blood alcohol level (.10) was error.
L.S.A.-R.S. 14:98 makes it a crime to operate a vehicle when either (1) the driver is under the influence of alcohol or (2) the driver's blood alcohol concentration is 0.10 percent or more. Results of a PEI test are presumptive evidence of alcohol influence, but "any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages" is admissible. L.S.A.-R.S. 32:662.
Roussel testified that Bradley's PEI test results were: "The final results was point one `o' percent" and "The final results was negative point one `o' percent." A later colloquy between Roussel and Bradley's attorney was just as confusing:
Q. Deputy Roussel, you said the test results were a negative one "o"?
A. Grams percent.
Q. Does that mean it is less than point one "o" grams percent?

*1149 A. No, sir.
Q. What is the negative for?
A. It's the reading of the blood alcohol level.
Q. I don't understand the term "negative", though. In other words, when you're looking at this reading you see minus point one "o" on it?
A. Yes, sir. That's showing of intoxicated.
Q. Which means it was less than point one "o"?
A. Yes, sir.
Q. So the test results were actually something less than point one "o", although maybe you couldn't identify an exact amount less?
A. Would you repeat that question?
Q. The test results were a negative point one "o"?
A. Yes, sir.
Q. Which means that it was less than point one "o"?
A. No, sir.
Q. What does the "negative" mean?
A. All right. The way it's set up on a scale there's a positive side and there's a negative side. And the blood alcohol determination came up to the negative side.
Q. So the negative side means it's less than point one "o"?
MR. GRAVOIS:
Your Honor, I think the witness has answered it. I think he is using a play on words, negative versus positive. I think it's like any other medical type examination. The results are either negative or positive, and I think it's a matter of the interpretation of the word.
THE COURT:
I will sustain the objection simply because the question has been asked and answered one time before.
The Photo-Electric Intoximeter Check List (State's Exhibit No. 2), Appendix A, sheds little light on this issue, since in one spot it reads "BLOOD ALCOHOL CONCENTRATION:.106g%" and in another it reads "RESULTS: -.10g%."
We believe it is obvious that Roussel made an error at some point in his mathematical calculations. The results obtained are too confusing and inconclusive to serve as a basis for convicting Bradley. However, these inconclusive test results were not the only evidence before the trial judge; and he may properly have considered any other competent evidence on this issue. L.S.A.-R.S. 32:662.
The only other evidence which supports Bradley's conviction is Warner's testimony that Roussel was driving twenty miles per hour below the speed limit, was weaving and crossing the center line, had red and watery eyes, had the odor of alcohol on his breath and clothes, staggered while walking, failed (but just barely) the field sobriety test, and admitted to having had a couple of beers and having had too much to drink.
Ultimately, the only issue to be resolved is whether this evidence was sufficient to support a conviction. We hold that it was. A rational trier of fact could have found, viewing this evidence in a light most favorable to the prosecution, that the essential elements of the crime of driving while intoxicated had been proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Captville, supra.
AFFIRMED.
NOTES
[1] "Under this statute a motorist who attempts to change lanes on a multiple-lane highway must ascertain before turning that the maneuver can be made safely without endangering normal overtaking or oncoming traffic. Jefferson v. Strickland, 242 So.2d 582 (La.App. 1st Cir. 1970); Trabeaux v. Sanchez, 279 So.2d 793 (La.App. 4th Cir.1973)." Raymond through Raymond v. Deaton, 423 So.2d 724, 727 (La.App. 1st Cir.1982).