WILLIAM A. CULPEPPER, Judge Pro Tem.
On April 9, 1986, the defendant, Calais Coleman, was convicted by a jury of third offense DWI, a violation of La.R.S. 14:98. On August 8, 1986, the defendant was sentenced to serve one year in Parish Jail suspended, except for six months, on condition that defendant perform community activities. Defendant appeals, raising three assignments of error.
FACTS
On December 30, 1984, at approximately 2:30 A.M., police officer Gervis Guidroz saw defendant’s car run a stop sign. When defendant was confronted, and could not produce a driver’s license, he was placed under arrest and given a field sobriety test. The defendant was taken down to the police department and given a photoelectric intoximeter test (P.E.I.).
Defendant’s record revealed prior convictions for driving while intoxicated, and defendant was convicted of driving while intoxicated, third offense.
Defendant appeals, alleging that the results of the photoelectric intoximeter test are inadmissible, and that the previous convictions for driving while intoxicated, which were guilty pleas, were not admissible to enhance his penalties, because he was not then advised of his right to trial by jury. Finding reversible error in defendant’s assignment of error number one, a discussion of the remaining assignments of error is pretermitted.

ASSIGNMENT OF ERROR NUMBER ONE\

In this assignment of error, the defendant contends that the trial court erred when it permitted into evidence the results of the photoelectric intoximeter (P.E.I.) test, when the evidence showed defendant was not advised, before submitting to the test, that a positive finding constituted a presumption that he was intoxicated, which finding would be used against him at trial.
The standard rights form which the defendant signed, reads as follows, in pertinent part:
“A. These are the CONSEQUENCES AND EFFECTS OF SUBMISSION OR REFUSAL TO SUBMIT TO THE CHEMICAL TEST.
* * * * * *
3. Evidence of your refusal to submit to this chemical test or test results of .10 percent or above will be used against you in court.”
We find the language used in this form to be insufficient to advise the defendant of the consequences of submitting to the chemical test. The explanation of the consequences of taking the P.E.I. test and registering an alcohol content above .10 percent merely indicated that if defendant submitted to chemical analysis, and the results of such analysis registered above .10 percent, such results could and would be used against him in a court of law. This explanation is deficient in that it fails to advise the accused of the more important consequence that such result would establish a conclusive presumption of guilt under the recently revised La.R.S. 14:98 A(2). In State v. Downer, 460 So.2d 1184, 1187 (La.App. 2 Cir.1984), the Second Circuit held as follows on the identical issue:
“The DWI statute, LSA-R.S. 14:98, as amended by LSA-Acts 1983, No. 634, § 1, provides in pertinent part:
The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator’s blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood;
[[Image here]]
The logic of applicant’s argument is clear. The legislature in R.S. 32:661 C(l) has mandated that the officer inform the accused of the consequences if the test is conducted and the results show a blood alcohol concentration of .10 *1063 percent or above by weight of blood. R.S. 14:98 A(2) establishes an irrebutta-ble presumption of intoxication if the blood alcohol level is .10 percent or more. Thus, if an accused submits to a chemical test which is properly administered in accordance with law, and if the test results show a blood alcohol content of .10 percent or more, then the test results are admissible in evidence at a criminal trial and will conclusively prove the element of intoxication. This irrebuttable presumption of intoxication, therefore, is the most significant consequence of which an accused must be informed.”
See also, State v. Singer, 457 So.2d 690 (La.App. 4 Cir.1984), writ den., 458 So.2d 465 (La.1984), which holds the same. We agree with these holdings in the Second and Fourth Circuits.
In this case, Trooper Guidry, the arresting officer, testified that he did not inform the defendant of his rights concerning the chemical test. Officer Uloth testified that he just read the chemical rights form to the defendant. Therefore, in this case, as were the defendants in the above cited cases, defendant was only informed that if he submitted to the test and registered .10 percent or above, such information would be used against him in court.
The court is aware that the defendant was arrested on December 30, 1984, which was after the effective date of the 1984 amendment to La.R.S. 32:661(C) which deleted subsection (2) from the statute. However, it does not follow that the test results, obtained in violation of the requirements of La.R.S. 32:661(0(1), as it then read, were admissible into evidence against the defendant.[1]
The statute, as it read on December 23, 1986, still explicitly required that the law enforcement officer shall inform the person requested to submit to chemical analysis of the consequences if the test is conducted and the results show a blood alcohol level of .10 percent or above. It is clear that defendant was not informed of the single most important consequence of submitting to the test. That the Legislature removed the mandatory provision on inadmissibility did not alter the fact that the arresting officer specifically contravened the statutory requirements of. La.R.S. 32:661(C) in violation of defendant’s rights.
The only means to assure compliance with the express requirements of the statute is to exclude the test results, whether or not the statute expressly mandates such exclusion. Police misconduct, whether intentional or not, resulted in a denial of defendant’s right to be informed of the consequences of submitting to chemical analysis.
This requirement was added to La. R.S. 32:661 by the 1983 amendment to the statute. Acts 1983, No. 632, § 1, effective Jan. 1, 1984. At the same time that the Legislature amended La.R.S. 32:661(C), the Legislature had also amended La.R.S. 14:98 A, redefining the crime of operating a vehicle while intoxicated. Acts 1983, No. 634, § 1, effective Jan. 1, 1984. The 1983 amendment no longer provided that a level of .10 percent or above established a rebut-table presumption of intoxication, but instead, provided that the crime of operating a vehicle while intoxicated is when ...
“(2) The operator’s blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or ...” La.R.S. 14:98A(2).
Thus, it appears that, under La.R.S. 14:98 A(2) as amended in 1983, a level of 0.10 percent or above establishes the fact of intoxication rather than a rebuttable pre *1064 sumption and thus establishes defendant’s guilt. It appears that, concomitant with raising the result of .10 percent or above from a rebuttable presumption to the fact of guilt, the Legislature expressly provided for protection of a defendant’s right to refuse to submit to chemical analysis, thereby allowing a machine to establish his guilt or innocence, by expressly requiring that the accused be informed of the consequences of submitting to the test and registering .10 percent or above. Defendant was clearly not informed of those consequences. The test results are therefore inadmissible.
In State v. Morrison, 392 So.2d 1037 (La.1980), the defendant argued that the P.E.I. test results in that case were inadmissible and that admission constituted reversible error. The court agreed that wrongful admission of the P.E.I. test results constituted a reversible error of law.
Accordingly, the trial court erred in ruling that the results of the P.E.I. test were admissible at defendant’s trial. This constituted reversible error, Morrison, supra. Therefore, the defendant’s conviction for driving while intoxicated, third offense must be vacated and set aside.
For the foregoing reasons, the defendant’s conviction is reversed and the sentence is vacated and set aside and the case is remanded to the trial court for retrial.
REVERSED AND REMANDED.

. Louisiana Revised Statutes 32:661(C) provides that:
"C. When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of alcohol in' the blood. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights. The law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form."