JASPER E. JONES, Judge Pro Tem.
Robert M. Honeyman was charged by bill of information with vehicular homicide in violation of LSA-R.S. 14:32.1 after the vehicle he was operating wrecked killing one of the two passengers. The defendant’s blood was determined to contain .16 percent by weight of alcohol approximately an hour and 45 minutes after the accident pursuant to a gas chromatograph test. The defendant filed a motion to suppress the results of the blood alcohol test which the trial court denied. The defendant was found guilty as charged by a jury and sentenced to two years at hard labor, the minimum sentence.
The defendant appeals his conviction raising 36 assignments of error, but only briefing seven assignments. Finding merit in defendant’s first assignment of error that the results of the blood alcohol test should not have been introduced into evidence, we reverse his conviction and remand the case to the district court for a new trial.

Facts

This one vehicle accident occurred during the early morning hours on October 20, 1985. The defendant was driving a 1975 Cadillac with two guest passengers when the car struck the right girder of the Old Blanchard Road bridge in Caddo Parish. The impact caused the collapse of a span of the bridge. The car landed on its roof and came to rest approximately 100 feet from the initial point of impact. The front seat passenger, Reginald Stanley, died from car-dio-respiratory failure when his neck was hyperflexed forward, dislocating his spine and lacerating or severing his spinal cord.
The defendant was injured in the accident and taken to the hospital. While there a sample of his blood was drawn by an employee of the North Louisiana Crimi-nalistics Laboratory (crime lab) who was *700 trained to draw blood for drug and alcohol related offenses. The blood was drawn in a collection kit approved by the Department of Public Safety and kept in the possession of the employee who drew the blood until he turned it in to the crime lab. The crime lab analysis revealed the sample contained 0.16 percent of alcohol by weight approximately an hour and 45 minutes after the accident. An expert on blood alcohol analysis estimated the defendant’s blood alcohol level at the time of the accident would have been between .186 and .20 percent.

Admissibility of Blood Tests

Defendant argues the results of the blood alcohol test should not have been introduced into evidence in light of State v. Rowell, 517 So.2d 799 (La.1988). In Ro-well, the Louisiana Supreme Court held the admission of the gas chromatograph tests results was erroneous because the state failed to meet its burden of proving the regulations insured the integrity and reliability of blood alcohol analysis. The court found the regulations concerning the qualifications of a person seeking a permit to conduct blood analysis were insufficient, the regulations did not provide for the repair, maintenance, or inspection of the gas chromatograph, the regulations did not require the chemist who performs the blood analysis to have the skills to perform some repairs on the instrument, the regulations did not sufficiently provide for the preservation of the blood sample, and finally, the regulations were not sufficient to insure the accuracy of the chemicals used to calibrate the gas chromatograph.
Tests for suspected drunken drivers are governed by LSA-R.S. 32:661 et seq. The Department of Public Safety is authorized to approve satisfactory techniques or methods to assure the accuracy of breath and blood analysis. LSA-R.S. 32:663; State v. Rowell, supra.
The regulations which were found deficient in Rowell are the same regulations in effect at the time the defendant’s blood was analyzed. The State maintains this case is distinguishable from Rowell because the additional procedures and safeguards employed by this particular crime lab facility are sufficient to ensure the integrity and reliability of the blood alcohol test results.
Honeyman’s blood sample was analyzed at the crime lab by Rebecca Collins who is certified by the Department of Public Safety to analyze blood. The crime lab established its own guidelines and procedures which the State claims exceeds the regulations established by the Department of Public Safety. The crime lab’s procedures add nothing to the Department of Public Safety’s regulations concerning the qualifications of persons seeking a permit to conduct blood analysis or the qualifications of persons to perform maintenance and inspection of the instruments which the Supreme Court found deficient. The crime lab does have additional procedures concerning the method of calibrating the instrument, the types of standards used in the calibration, and the method of calculating the percentage of alcohol in the blood sample. The crime lab’s procedures do provide detailed descriptions of the chemicals used to calibrate the gas chromatograph which the regulations in Rowell did not contain. Finally, the regulations concerning the preservation of the blood sample are no different in this case than the insufficient regulations in Rowell.
The procedures used by the crime lab are somewhat better than the regulations in Rowell but they do not substantially improve upon the areas which the Supreme Court found deficient. If the regulations are insufficient to insure the integrity and reliability of the blood alcohol analysis, then the results of such analysis should not be admitted at the trial where intoxication is an element of the crime. The State through the Department of Public Safety has the authorization and obligation to establish regulations that will insure the integrity of the results.[1] Unless the tests *701 are performed pursuant to regulations promulgated by Department of Public Safety which adequately insure the integrity and reliability of the results the state cannot avail itself of the statutory presumptions of intoxication found in LSA-R.S. 32:662. LSA-R.S. 32:663; State v. Morrison, 392 So.2d 1037 (La.1980); State v. Rowell, supra.
Even if the crime lab procedure here followed were adequate to satisfy the deficiencies of the procedures found in Ro-well, they could not supplement the defective regulations because they were not adopted and promulgated by the Department of Public Safety as required by LSA-R.S. 32:663.
The wrongful introduction of a chemical test results, which by law presumes a defendant to be intoxicated, is so prejudicial to the defendant that a resulting conviction cannot stand even if there is other evidence of intoxication. State v. Tanner, 457 So.2d 1172 (La.1984); State v. Rowell, supra; State v. Hill, 531 So.2d 463 (La.1988). As in Rowell, this decision does not entail a finding that there was an insufficiency of evidence to convict defendant, but only that the admission of the gas chromatography test results was erroneous. Therefore, the defendant may be retried on the responsive charge of negligent homicide or any other charge which may be validly asserted against him in accordance with law. State v. Morrison, supra; State v. Rowell, supra.
For the foregoing reasons, the defendant’s conviction and sentence are reversed and the case is remanded to the district court for a new trial in accordance with law.
HIGHTOWER, J., dissents and assigns written reasons.

. The Department of Public Safety has promulgated new regulations concerning the analysis of blood in LAC 55:1 Chapter 5, § 551 et seq which became effective June 20, 1988. These *701 regulations were adopted in response to State v. Rowell, 517 So.2d 799 (La.1988), and were not in effect at the time of this incident.