## STATE OF FLORIDA v PASCHALL, et al.
### Case Nos. 91232-CM, 41575-CL, 87942-CN
County Court, Volusia County
August 30, 1990

**APPEARANCES OF COUNSEL**

**Ed Davis, Esquire,** for plaintiff.
**Flem Whited, III, Esquire,** for defendants.

### OPINION OF THE COURT

FREDDIE J. WORTHEN, County Judge.

THIS CAUSE having come to be heard on the defendant's Motion to Suppress the results of the chemical test of their blood to determine the alcoholic content thereof (BAC) and the Court having heard the testimony of expert witnesses, Dr. Howard R. Rarick, Scientific Director of the Florida Implied Consent Program, State of Florida Department of Health and Rehabilitative Services (HRS) for the State and Dr. Richard Jensen, expert in analytical chemistry, toxicology and blood/breath testing for the defense, the argument of counsel, reviewed

statutory and decisional law and being otherwise fully advised in the premises finds as follows:

The defendants were arrested and charged with Driving Under The Influence (DUI) and subsequently submitted to the withdrawal of samples of their blood, on the request of law enforcement officers, to determine its BAC.

Blood samples were withdrawn and tested pursuant to rules promulgated by HRS under Section 316.1932(1)(f)1.

The defendants allege that the HRS rules in effect at the time their blood samples were taken and tested failed to insure the scientific accuracy and reliability of the test in that:

a. There were no rules and regulations, at all, promulgated pursuant to Section 316.1932(1)(f)(c) which approved any specific brand of gas chromatography or testing instrument that uses the alcohol dehydrogenase method.

b. No rules and regulations were in effect that dealt with the prior registration of any particular brand of instrument using the gas chromatograph or alcohol dehydrogenase.

c. No rules and regulations had been promulgated that dealt with any system of continued monthly maintenance to insure continued accuracy and reliability of any machine using the gas chromatographic or alcohol dehydrogenase method.

d. There were no rules or regulations requiring agencies operating these machines to maintain a running log of all test or tests administered under the above section.

e. No rules or regulations were in effect that dealt with the specific administration of each and every test done under the Implied Consent Section.

The defendants further contend that their right to equal protection were violated as the result of the disparity in the regulations dealing with breath and blood.

The State contends that there are five mandatory legislative requirements for blood testing that HRS must satisfy. HRS Rules must:

1. Be adopted after public hearing.

2. Specify the tests that are approved by HRS.

3. Set forth an approved method of administration.

4. Insure that testing is performed by a qualified individual with a valid permit.

5. Insure that testing be performed substantially in accordance with methods approved by HRS.

The State alleges that HRS Rules pertaining to blood testing were adopted after a public hearing. Second, HRS Rule 10D-42.028 specifies the two tests approved by HRS, alcohol dehydrogenase and gas chromatography. Third, an approved method of administration is set forth in Rule 10D-42.029 pertaining to the taking and collecting of the blood sample. By definition under Rule 10D-41.0211, and agreed to by both the State expert witness (Dr. Rarick) and the defense expert witness (Dr. Jensen) administering refers to the taking or collecting of a sample. Fourth, the permit requirement is satisfied by Rules 10D-42.030 through Rule 10D-42.033.

The Court finds that Section 316.1932(1)(f)1 covers the testing of blood samples to determine the BAC and states that:

"The tests determining the weight of alcohol in the defendants blood shall be administered at the request of a law enforcement officer substantially in accordance with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. Such rules and regulations shall be adopted after public hearing, shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration and shall provide an approved method of administration which shall be followed in all such tests given under this section."

An examination of each element of the statute reveals that in promulgating Rule 10D-42.028, Blood Alcohol Testing, HRS specified the tests to be used for testing blood samples to determine the BAC. The Rule directs that:

"Unclotted whole blood shall be tested for alcohol using the alcohol dehydrogenase or gas chromatography quantitative method."

Dr. Rarick testified that the blood alcohol testing permit process, HRS Rule 10D-42.030(1)(d) requiring the submission of the complete description of procedures used in determining BAC satisfied the statu-

tory requirements of Section 316.1932(1)(f)(1). The State's position is that by requiring the applicants to show that they have a clinical laboratory license in clinical chemistry as a technologist, supervisor or director under Chapter 483 Florida Statutes or be a licensed practitioner of the healing arts or be an analytical chemist with a minimum of 60 semester credit hours or equivalent of college, at least 15 semester hours of which must be in college chemistry along with describing the procedures they will use in determining BAC in addition to satisfactorily analyzing and quantitating blood alcohol in proficiency samples provided by HRS satisfies the statutory requirement of specifying precisely the test approved by HRS. Further, whatever procedure test or method is approved becomes the precise test. HRS Rule 10D-42.0211(9) states method shall mean a set of instructions detailing the proper operation of an instrument or the procedure used to analyze for a specific compound. Under the Rule which requires that HRS specify the precise test any evidence of the test is contained in the file of HRS and/or the analyst. It appears that the statute mandates that HRS approve specific equipment to be used for testing blood and publish detailed instructions for its use. Presently the defendant is left to find out from each analyst what machine was used and what procedure that he/she followed rather than being able to refer to instructions provided by HRS for a specific machine such as found in the breath testing rules in spite of the number of variations that may occur providing what procedure is followed.

The statute also requires HRS to insure the reliability of the method or procedures used in testing the blood samples. Presently the reliability of the test rest solely with the analyst. The detection of any variances in the tests, maintenance of the gas chromatograph or whatever equipment is used is dependent upon the proficiency and reliability of the analyst. There are no published procedures regarding the maintenance of the equipment. therefore, there are no uniform standards for maintenance and repairs. Once again whether or not the equipment operates properly is left to an analyst. For example, when breath machines are used HRS regulation dictates the number of tests that must be given, the allowable error in the machine, the frequency of maintenance, who performs the maintenance and what records are to be maintained. To leave the reliability of the blood testing equip-

ment to an analyst is improper. Dr. Rarick suggested that the defendant could contact the analyst and question him/her about the procedures used and how the analyst insured reliability. The Court finds this is not an adequate substitute for published rules and regulations.

The statute requires HRS to establish an approved method of administration which shall be followed in all such tests given under Section 316.1932(1)(f)1.

The State alleges that Rule 10D-42.029, Blood Specimens-Labeling, Collecting, Storage satisfies the statutory requirement for an approved method of administration. The Court agrees in part and finds the procedure adequate pursuant to the definition of administering in Rule 10D-42.0211 as for[far] as the collection, labeling and storage of the sample. However, Rule 10D-42.0211(9) provides:

"Methods-shall mean a set of instructions detailing the proper operation of an instrument or the procedures used to analyze for a specific compound."

There are no detailed instructions detailing the operation of any instrument used for the testing of blood samples or the procedures used to analyze for a specific compound. Thus, the Court finds that HRS has not followed the law which mandates that it provide an approved method of administration which shall be followed in each test. In *State v Galliano,* 37 Fla. Supp.2d 214 (Dade County Court 1989), the Court found that HRS simply ignored a statutory directive that it must approve not only gas chromatography in general, but the methods by which the test should be administered. The Court found no statutory rationale for drawing a distinction between blood and breath testing. Louisiana Courts have also found regulations inadequate in that regulations meeting blood alcohol analysis do not include provisions for repair, maintenance, inspection, cleaning, certification and chemical accuracy. See *State v Rowell,* 517 So.2d 799 (LA 1988), *State v Tanner,* 457 So.2d 1172, *State v Honeyman,* 545 So.2d 698.

This Court finds that the Rules implemented by HRS, to satisfy the requirements of Section 316.1932(1)(f)1 are insufficient. HRS has failed to identify and approve instruments to be used in testing blood samples using the alcohol dehydrogenase or gas chromatography methods. Further, it has failed to provide detailed instructions as to the operation of any instrument used to test blood samples for their ethyl alcoholic content. The procedures used in issuing permits lack the uniformity mandated by the statute.

This Court is also cognizant of the findings in *State v Strong,* 504 So.2d 758 (Supreme Court of Florida 1987). In *Strong* the defendant

was charged with manslaughter after an automobile collision which caused two deaths. Strong was taken to a hospital where a non certified lab technician removed blood for testing. The blood was drawn for medical purposes only and not in furtherance of a criminal or accident investigation. The state subsequently obtained a lawful search warrant and seized the blood samples and resulting tests from medical personnel. Strong moved to suppress the evidence, which was granted by the 3DCA, on the ground that blood samples and tests were inadmissible under Section 316.1932(1)(f)2 because of the non-certification of the lab technician. The Supreme Court of Florida reviewed and reasoned that the legislature did not intend this statutory safeguard of the implied consent law to apply to all blood tests offered as evidence. The Court held that the evidence was admissible because Section 316.1932(1)(f) was not implicated in that the blood was not taken under the provisions of that section. This Court interprets that decision to mean that if the blood had been withdrawn under the provisions of the implied consent law then it would have been inadmissible. This Court finds that in the instant cases the implied consent law applies and governs the admissibility of the blood samples and test results.

Therefore, for all the reasons stated above this Court finds that the results of the blood tests in these cases is inadmissible and it is hereby,

ORDERED AND ADJUDGED that the defendant's Motion to Suppress be and the same is GRANTED.

DONE AND ORDERED in Chambers at Daytona Beach, Volusia County, Florida this 30th day of August, 1990.